## R. S. SMITH *vs.* MARY LEWIS.

### January Term, 1867.

1, The purchaser of land sold as delinquent for the non-payment of taxes under chapter 37 of Code of Virginia 1860, acquires such title and estate as was vested in the party assessed with taxes on account of whose delinquency the sale was made, at the commencement of the year for which the taxes were assessed; therefore where the owner of land has previously executed a trust deed to secure the payment of money thereon, the purchaser of the same at a tax sale for delinquency only acquires the equity of redemption existing in the grantor in the trust; and the land is first liable to the payment of the trust lien.

2. The circuit court of *Wood* county ordered the sale of certain real estate, which is made in the manner provided in the decree, and brings the price and value of 2,495 dollars; afterwards, and before the sale is confirmed the real estate is appraised according to the provisions of the † act of Legislature passed December 9th, 1863, at the sum of. 2,800 dollars; S. one of the defendants objects to the confirmation of the sale, on the ground that he has complied with the requirements of the last section of the act, as was evidenced by the certificate of the Recorder filed in the papers of the cause, (but whether filed before or after the sale does not appear by the record,) and that the appraisement *after* the sale was not a compliance with the act: HELD,

> That the decree of the circuit court confirming the sale is not erroneous, and is not one of which the appellant can complain, the property bringing more than the *per centum* required by the act.

*Mary Lewis* filed a bill in the circuit court of *Wood* county

*See page 1.

† *Be it enacted by the Legislature of West Virginia:*
I. Before any sale of property stayed by the provisions of the act passed January thirtieth, eighteen hundred and sixty-three, by the general assembly of Virginia, entitled "An act staying the collection of certain debts," shall be made, it shall be the duty of the officer or person authorized to make such sale, to appoint three discreet and reputable freeholders, to affix a valuation

in April, 1865, alleging that in June, 1856, one *Edward W. Lewis* executed to *Stephen C. Shaw*, trustee, a deed of trust to secure the oratrix in the payment of 1,500 dollars with intererest from November, 1853; the trust embraced two lots of land designated as "part of out lot No. 14" and "lot No 6 in Harris' addition," in the town of Parkersburg; that in 1859 the lots were returned delinquent for the non-payment of taxes, and certified by the Auditor at *Richmond* to the sheriff of *Wood* county in 1860, according to law, as delinquent, and were sold in September, 1860, to one *R. S. Smith*, for the taxes and interest, but that on what day in September or what part of the lands were sold, or whether during a term of the county court, did not appear by the commissioner's books, certified copies of which were filed with the bill. That in 1863, in March, *William Hatcher*, clerk of the county court of *Wood* county, executed certain instruments of writing purporting to be deeds conveying

on such property, in manner and form following, that is to say: the said appraisers shall take and subscribe an oath before some person legally authorized to administer the same, to the effect that they will truly, justly, and impartially examine, estimate, and appraise the fair cash value of all such property as is exhibited to them for that purpose, and liable to sale. The said appraisers shall thereupon proceed to assess the value of each piece or parcel of said property as aforesaid, and make return of said valuation and appraisement, one copy to the officer and another copy to the recorder's office; to which they shall append their certificate that they have, after being duly sworn, fairly and impartially, to the best of their judgment, valued and appraised the property therein set forth; and each shall sign his name thereto with the proper date and place.

2. The officer or person legally authorized to sell as set forth in the preceding section, may thereupon, having given such notice of time and place as the law, decree or order, deed of trust or mortgage may prescribe, proceed to expose to sale to the highest bidder, the property so valued and appraised; and if bidders are found to purchase such property at seventy-five per centum of the valuation and appraisement, then the sale shall be valid, and the property shall pass to the bidder or purchaser; but if the bids shall not be seventy-five per centum of the valuation and appraisement, then the sale shall not be valid, and the officer or person authorized to sell shall withdraw said property from sale for the time, but may from time to time at intervals of not less than ninety days, expose the same until purchasers may be found willing to bid the seventy-five per centum of the valuation and appraisement.

3. No defendant shall be entitled to the benefits of the provisions of this act, who shall not before the day of such sale take and file in the office of the recorder of his county the oath prescribed in the act passed on the sixteenth day of November, eighteen hundred and sixty-three, amending and re-enacting the first section of the act passed on the twenty-sixth day of June, eighteen hundred and sixty-three, entitled "An Act concerning oaths and affirmations."

"part of out lot No 14" and "part of out lot No. 6" in Harris' addition to the town of Parkersburg, to the said *R. S. Smith*, and that these instruments were duly acknowledged and admitted to record, and that *Smith* had taken possession of the lots and claimed to be the absolute and lawful owner of them.

The oratrix charged that the listing of the part of out lot No. 14, was void for want of certainty of description, and that the sheriff had no authority to sell a part of a town lot; that the instruments purporting to be deeds were vague and indefinite and void for want of uncertainty, and that the return of sales made by the sheriff, who acted by deputy, was fatally defective and irregular, in not showing when the sales were made; by reason of which no title passed to *Smith*, but that the lots were still liable to the payment of her trust, and that in consequence of the sale for taxes, the trustee *Shaw* refused to act; she therefore asked the appointment of another trustee and an order of sale to satisfy her claim secured by the trust deed.

*Smith* answered that the proceedings were all regular; that the lien of the commonwealth which he purchased was paramount to the lien of the complainant's trust; that the trust was only a lien upon what interest *E. M. Lewis* had, and that by operation of law that was forfeited to the commonwealth and carried the lien of the trust, and that whatever estate was vested in *E. M. Lewis* was in *Smith* by the deeds notwithstanding any irregularity that appeared in the proceedings, unless it appeared on the face of the same.

The court ordered a sale of the lots, at the June term, 1865, to satisfy the claim of the complainant, and appointed *Joseph Spencer* trustee in the place of *Shaw*. *Spencer* reported at the October term that he had made sale of the lots, and after satisfying the complainant's lien there remained a surplus of 140 dollars and 25 cents, which was ordered to be paid to the defendant *Smith* upon his entering into bond in the penalty of 200 dollars, conditioned to abide any future order made in the cause in behalf of the defendant *E. M. Lewis.*

The defendant *Smith* excepted to the report, and objected to the confirmation of the sale on the ground that it was the duty of the trustee to have had the lots appraised according to the provisions of the act of the Legislature passed December 9th, 1863, he, *Smith,* having complied with the provisions thereby contained in the last section, as evidenced by the certificate of the Recorder filed in the papers of the cause, which was the oath prescribed in the act; (but nothing in the record showed whether the oath was filed before the sale or after,) and it appearing by the appraisement that it was made *after* the sale and not before as required by the statute. The report of the trustee showed that the sale was made on the 30th day of August, 1865, and that the property brought 2,495 dollars, and that the appraisement was made on the 15th of September, following, and that the value was assessed at 2,800 dollars by the appraisers.

The following is the record of the proceedings under which the lots were sold, at the tax sale where *Smith* became the purchaser:

Jan'y Term,   Smith *vs.* Lewis.   1867.

A Record of the Proceedings had in the matter of the sale of part of Out Lot No. 14, in Parkersburg, and of Lot No. 6 in Harris' Addition to the town of Parkersburg, returned as delinquent for the non-payment of the taxes thereon for the year 1859, in the name of Edward W. Lewis, and sold by the sheriff of Wood county, in the year 1860, for said taxes.

List of the Taxable Town Lots within the District of Samuel Emrick, Commissioner of the Revenue in the county of Wood, for the year 1857.

| Name of owner. | Residence. | Estate, whether in Fee or for Life. | No. of each lot in the town, or a description of the part of lot owned. | Name of Town. | Value of buildings. | Val. lots, incl. buildings. | Am't taxes, legal rates. | Am't taxes, county purp's | Explanations, &c., |
|---|---|---|---|---|---|---|---|---|---|
| Lewis, Edw'd W. | Missouri. | In Fee. | Part of Out Lot No. 14. | Parkersburg. | | 800 00 | 3 20 | | |
| Same. | " | " | Lot No. 6 Harris' addition. | " | | 200 00 | 60 | | |

A copy from the commissioner's land book for Wood county, for the year 1859.

Teste:

G. K. LEONARD, R. W. C.

AUDITOR'S RETURN FOR 1860.     COUNTY OF WOOD.

*A List of all Real Estate returned delinquent for the non-payment of taxes assessed thereon for the years 1855, 1856, 1857, 1858, and 1859, which has not heretofore been offered for sale, including interest thereon, at the rate of six per centum per annum from the 15th day of December of the year such taxes were assessed, until the 1st day of September, 1860.*

| Name of person charged with the tax. | Quantity land charged. | Local Description. | Taxes for 1859, and interest since 15th Dec., 1859, until 1st Sept. 1868. | | Total of all taxes and interest. |
|---|---|---|---|---|---|
| | | | Taxes. | Interest. | |
| Lewis, Edward W. | Part out lot No. 14. | Parkersburg. | 3 20 | 15 | 3 35 |
| "   " | Lot No. 6. | Harris' add'n Parkersburg. | 80 | 5 | 84 |

A copy from the Auditor's Report, now on file in the Recorder's office of *Wood* county, *West Virginia.*

Teste:

G. K. LEONARD, R. W. C.

*List of Real Estate within the county of Wood, sold in the month of September, eighteen hundred and sixty, for the non-payment of taxes thereon for the years 1854, 1855, 1856, 1857 1858, and 1859.*

| Name of person charged with taxes. | Quantity of land charged. | Local description. | Am't tax due. | Quantity of land sold. | Name of purchaser. | Am't of Purchase money. |
|---|---|---|---|---|---|---|
| Lewis, Edw'd W. | P't of Outlot No. 14. | Parkersburg. | $3 25 | No. 6 H. add'n. | R. S. Smith. | 3 35 |
| do. | " No. 6. | Harris' addition. | 3 84 | Pt. Lt. 14. | do. | 3 84 |

I, *Henry H. Dils*, deputy for *George L. Harwood*, sheriff of the county of *Wood*, do swear that the foregoing list contains a true account of all the real estate within my county which has been sold by me during the present year, for the non-payment of taxes thereon for the years 1854, 1855, 1856, 1857, 1858, and 1859; and that I am not, directly or indirectly, interested in the purchase of any of the said real estate. So help me God

H. H. DILS, D. for G. L. HARWOOD, S. W. C.

Subscribed and sworn to before me, a Justice of the Peace for the county of *Wood*, this 17th day of November, 1860.

J. W. Moss, J. P.

A copy from the sheriff's return now on file in the Recorder's office of *Wood* county, *West Virginia.*

Teste:

G. K. LEONARD, R. W. C.

The following is the deed for part of out lot No. 14.

"Whereas, A certain part of out lot No. 14, situate in *Wood* county, in the town of *Parkersburg*, was entered upon the books of the commissioner of the revenue for said county for the year 1859, and charged in said year with the sum of 3 dollars and 35 cents, being the tax assessed thereon according to law, in the name of *Edward W. Lewis*. And whereas, the said part of out lot No. 14 was returned delinquent for the non-payment of the taxes charged thereon as aforesaid, for the year aforesaid, within the time and in the manner prescribed by law, which return, being examined and approved by the county court of said county, was ordered to be certified by the clerk thereof to the Auditor of Public Accounts, as by law directed. And whereas, *J. M. Bennett*, Auditor of Public Accounts, on the 7th day of June, 1860, transmitted to the sheriff of said county a list of lands and lots returned delinquent in said county, the taxes and damages on which had not been paid as directed by law, which list included the aforesaid part of out lot No. 14, returned delinquent as aforesaid, with a statement of the taxes due and six per centum damages thereon for the year the taxes aforesaid remained due and unpaid, amounting in all to the sum of 3 dollars and 35 cents, as appears by said list now on file in the Clerk's office of the said county court. And whereas, *Henry H. Dils*, deputy for *G. L. Harwood*, sheriff of said county, did (as appears by his affidavit filed in said clerk's office) proceed to give the notice required by law, and, on the 17th day of September, 1860 (during the September term of the county court of said *Wood* county), proceed to offer for sale the least quantity or portion of the said part of out lot No. 14, for which any person would pay the aforesaid sum of 3 dollars and 35 cents due as aforesaid, with five per centum to the sheriff for selling the same, amounting in the whole to the sum of 3 dollars and 80 cents; whereupon *Robert S. Smith* offered to pay the said sum of 3 dollars and 80 cents for the whole of the said part of out lot No. 14, and no person offering to pay it for a less quantity of said part of said out lot No. 14, the whole of the said

part of out lot No. 14 was sold and struck off to the said *Robert S. Smith* for the sum last aforesaid, which sum was by the said *R. S. Smith* to the said *Henry H. Dils*, deputy for *G. L. Harwood*, sheriff of said county, in hand paid—as appears by a receipt dated the 17th day of September, 1860, and filed in the clerk's office of said court. And whereas, it does not appear that the said *Edward W. Lewis* or his legal representatives has availed himself or themselves of the privilege of redeeming the said part of out lot No. 14 within the time and in the manner prescribed by law. And whereas, the said *Robert S. Smith* hath requested the undersigned *William Hatcher*, clerk of the county court aforesaid, to execute a deed conveying to him the said part of the said out lot No 14, so purchased as aforesaid, in conformity with the sale thereof.

"Therefore this indenture witnesseth, That, pursuant to the law in such case made and provided, and in consideration of the said sum of 3 dollars and 80 cents, paid by the said *Robert S. Smith* as aforesaid, I, *William Hatcher*, clerk of the county court of *Wood* county aforesaid, do by these presents grant, convey and confirm, unto the said *Robert S. Smith* the aforesaid part of out lot No. 14; to have and to hold the same unto him, his heirs and assigns, forever, against the claims of the said *Edward W. Lewis*, and all persons claiming by, through or under him, but not otherwise.

"In witness whereof, the said *William Hatcher*, clerk as aforesaid, doth hereunto set his hand and seal, the 16th day of March, 1863.                          W. HATCHER, [SEAL.]
                          Clerk Wood County Court."

The deed for lot No. 6 is as follows:

"*Deed from Clerk to R. S. Smith, for Lot No. 6, Harris' Add'n.*

"Whereas, A certain part of out lot No. 6 in Harris' Addition to the town of *Parkersburg*, in the county of *Wood*, was entered upon the books of the commissioner of the revenue for said county for the year 1859, and charged in that year with the sum of eighty cents, being the tax assessed thereon according to law, in the name of *Edward W. Lewis*, described on the said commissioner's book as

lying and being in Harris' Addition to the town of *Parkersburg*. And whereas, the said part of out lot No. 6 in Harris Addition to the town of *Parkersburg* was returned delinquent for the non-payment of the taxes charged thereon as aforesaid, for the year aforesaid, within the time and in the manner prescribed by law, which return, being examined and approved by the county court of said county, was ordered to be certified by the clerk thereof to the Auditor of Public Accounts, as by law directed. And whereas, *J. M. Bennett*, Auditor of Public Accounts, on the 7th day of June, 1860, transmitted to the sheriff of said county a list of lands and lots returned delinquent in said county, the taxes and damages on which had not been paid as directed by law, which list included the aforesaid part of out lot No. 6 in Harris' Addition to the town of *Parkersburg,* returned delinquent as aforesaid, with a statement of the taxes due, and six per centum damages thereon for the year the taxes aforesaid remained due and unpaid, amounting in all to the sum of eighty-four cents, as appears by said list now on file in the clerk's office of the said county court. And whereas, *Henry H. Dils*, deputy for *G. L. Harwood,* sheriff of said county, did (as appears by his affidavit filed in said clerk's office) proceed to give the notice required by law, and on the 17th day of September, 1860 (during the September term of the county court of said county of *Wood*), proceed to offer for sale the least quantity or portion of the said part of out lot No. 6, in Harris' Addition to the town of *Parkersburg,* for which any person would pay the aforesaid sum of eighty-four cents due as aforesaid, with five per centum to the sheriff for selling the same, amounting in the whole to the sum of one dollar and thirteen cents; whereupon *Robert S. Smith* offered to pay the sum of one dollar and thirteen cents for the whole of said part of out lot No. 6, in Harris' Addition to the town of *Parkersburg,* and no person offering to pay it for a less quantity of said part of out lot No. 6, the whole of the said part of out lot No. 6, was sold and struck off to the said *Robert S. Smith* for the sum last aforesaid; which sum was by the said *Robert S. Smith* to the said *Henry*

*H. Dils*, deputy for *G. L. Harwood*, sheriff of said county, in hand paid, as appears by a receipt dated the 17th day of September, 1860, and filed in the clerk's office of said court. And whereas, it does not appear that the said *Edward W. Lewis* or his legal representatives has availed himself or themselves of the privilege of redeeming the said part of out lot No. 6, in Harris' Addition to the town of *Parkersburg*, within the time and in the manner prescribed by law. And whereas the said *Robert S. Smith* hath requested the undersigned, *William Hatcher*, clerk of the county court aforesaid, to execute a deed conveying to him the said part of out lot No. 6, in Harris' Addition to the town of *Parkersburg*, so purchased as aforesaid, in conformity with the sale thereof:

"Therefore this indenture witnesseth, That, pursuant to the law in such cases made and provided, and in consideration of the said sum of one dollar and thirteen cents paid by the said *Robert S. Smith* as aforesaid, I, *William Hatcher*, clerk of the county court of *Wood* county aforesaid, do by these presents grant, convey and confirm unto him, the said *Robert S. Smith*, the aforesaid part of out lot No. 6, in Harris' Addition to the town of *Parkersburg*; to have and to hold the same unto him, his heirs and assigns, forever, against the claims of the said *Edward W. Lewis* and all persons claiming by, through or under him, but not otherwise.

"In witness whereof, the said *William Hatcher*, clerk as aforesaid, doth hereunto set his hand and seal, this 16th day of March, 1863.       W. HATCHER, [SEAL.]
Clerk Wood County Court."

*Smith* appealed from the decree of the circuit court confirming the sale, alleging error as follows: 1st, The court erred in decreeing a sale of the lots to pay the complainant's debt, as she had suffered the same to be returned delinquent for the non-payment of taxes, which delinquency had carried with it all right, title and interest of *E. W. Lewis*, and that complainant's lien was only in that right. 2nd, The sale could not be had under the trust until the lots were appraised as required by the act. 3rd, The exception was

well taken, as *Smith* had taken the oath as required by the statute and the sale should not have been confirmed, but a new one ordered. 4th, The appraisement after the sale was no compliance with the act.

*J. M. Jackson*, for the appellant.

*Joseph Spencer*, for the appellee.

BROWN, PRESIDENT.

Edward W. Lewis, being the owner of two lots of land in the town of Parkersburg, gave a deed of trust upon them in 1856, to secure a debt of 1,500 dollars, which he owed to the appellee, Mary Lewis; which trust deed was duly recorded. These two lots were charged with taxes for the year 1859 in the name of said Edward W. Lewis and returned delinquent for the non-payment thereof, and certified by the auditor to the sheriff of Wood county for sale, in 1860, and by him sold in September of that year, as entire lots, to the appellant Robert S. Smith.

In March, 1863, the said Smith procured from the clerk of the county court of Wood county a deed for each of the said lots so purchased by him, which were duly recorded within the time required by law.

Mary Lewis afterwards filed her bill in the circuit court of Wood, to subject the said lots to the payment of her trust debt, and made Edward W. Lewis, and the said Robert S. Smith, and Stephen C. Shaw, who was the trustee in the said trust deed, parties defendant. The circuit court decreed the land to be sold and the debt of Mary Lewis to be first paid out of the proceeds, and the residue of about 100 dollars, after paying the costs, to be paid to the appellant, Robert S. Smith, the purchaser at the tax sale. The commissioner appointed by the court to make the sale in the place of the trustee, who declined to act, advertized and sold the lots, without first having the same appraised as provided by the act of December 9th, 1863; but soon after discovering his omission in that particular, had the same done,

and filed the report of the appraisers along with his report of sale, for the consideration of the court. The defendant, Smith, objected to the confirmation of the sale on account of the alleged irregularity in not having the appraisement before the sale, and claimed that its being subsequent vitiated the sale; but the objection was overruled.

The appellant assigned for error the following, viz: 1st, That the court erred in sustaining the incumbrance of Mary Lewis on the lands in the hands of the purchaser at the tax sale. 2nd, That there could be no sale till after the appraisement.

Now, by the 23rd sec., chap. 37, of the Code 1860, it is provided that when the purchaser of any real estate so sold, gets his deed, in conformity with the statute, "such estate shall stand vested in the grantee in such deed, as was vested in the party assessed with taxes (on account whereof the sale was made) at the commencement of the year for which the taxes were assessed, and on account whereof the sale was made." Edward W. Lewis in whose name the lands were charged, had only an equity of redemption therein after paying the trust debt secured on the lots to Mary Lewis. And as Smith, as purchaser at the tax sale can claim no more than the estate conferred by his tax deed, he is limited to the equity of redemption, that being all the estate vested in Lewis, in whose name it was charged with taxes and delinquement.

There is no error in the decree, therefore, on the first ground, viz, for sustaining the incumbrance. The second error assigned is that there could be no sale till after the appraisement, and that the appraisement made after the sale, but before confirmation, could not cure the defect.

By the statute of December 9th, 1863, it is provided that before any sale, &c., shall be made, &c., the property must be appraised. This act clearly contemplates a prior and not a subsequent appraisement, and as a preliminary step to the sale. That was not done, and the subsequent appraisement is not a compliance with the plain and positive requirements of the act.

And if the act be valid the sale should have been set aside. But it is claimed that the act impairs the obligation of the contract of the appellee in obstructing the sale of the trust subject, and is therefore unconstitutional and void.

And such seems to be the result of the principle decided by the supreme court of the U. S. in the cases of *Bronson* vs. *Kinzie*, 1 How., 311, and *McCracken* vs. *Hayward*, 2 Howard, 608, wherein that count held an appraisement law of Illinois, similar to our own, void as to antecedent debts and contracts, and directed a sale of the mortgage subject in one case, and the land levied on, in the other, to be sold without appraisement in disregard of the provisions and requirements of the Illinois statute.

But the present case is different from that, in this: that, in that case, the Illinois statute prevented a sale, because the property did not bring two-thirds of the appraisement value; but here the property sold for more than three-fourths of the appraisement value, and consequently the West Virginia statute did not prevent nor prohibit the sale in question, nor obstruct the complainant in the court below from collecting her debt. It can not, therefore, be said to impair the obligation of the particular contract in question, and can not, therefore, be said to be repugnant to the constitution so far as this case is concerned, whatever may be its character and effect on other contracts and cases not before this court, or which may arise.

Because the act requires an appraisement before the sale, it is not necessarily void for that matter, because an appraisement is a regulation, not a defeasance of the sale—can work no injury to the creditor, or other party to the contract, whether they be parties in interest or privity, and because an appraisement, however cumbersome it may prove in judicial proceedings generally, yet might be a useful means of providing the court with additional evidence of the propriety or impropriety of confirming a sale made under its orders. For whether the property sold for an adequate or inadequate price is always a question for the consideration of the court upon the question of confirming or setting aside

the sale made by its officers. I do not think, therefore, that the appraisement required by the act, if it had been complied with, would or could have obstructed the complainant in the court below, in making the sale, or collecting her debt; and the act in question cannot therefore, on that ground be held to impair the obligation of the contract in question, and is not, therefore, repugnant to the constitution or void, so far, at least, as the case at bar is concerned.

The only remaining question is that raised by the appellee's counsel, assailing the validity of the tax deeds. One deed is for part of out lot No. 14, in the town of Parkersburg, charged to Edward W. Lewis resident in Missouri, and is the same lot described in the deed from Tavenor to said Lewis, dated March 17th, 1853. It is the same lot certified by the auditor to the sheriff, for sale as delinquent, and the same lot sold by the sheriff, and is described in the deed of the clerk to Smith substantially as described in the said deed from Tavenor to Edward W. Lewis. It is objected to this, that while the deed is sufficiently certain, yet that the enlistment of the lot on the commissioner's book for taxation, does not sufficiently describe the lot and that therefore the deed resting upon it must be bad for the same reason.

But if this fullness of description were requisite in the tax list, why should the statute in sections 15 and 16, chap. 37, Code 1860, provide for surveys and reports to describe and certify that which was already fully described and certified?

Again, it must be borne in mind that the land books of the counties, and throughout the State, are prepared in ruled forms, by the auditor as required by law and transmitted to the several commissioners; that they contemplate only very brief notes of description, and very small space in the land books is assigned for that object, to meet the requirements of the statute, the substance of which are brief statements in separate columns of the names of the owners, their residence and estate, quantity and description of the land, by contiguous tracts, water courses, mountains or other places.

on or near which it lies, distance and bearing from the court-house, and from whom and when the title derived, where known, and in case of a town lot, the No. of each lot. Now, the listing of the lots in question, when tested by the requirements of the statute, and the universal practice of the commissioners in making out the land books of the counties, will be seen to be a substantial compliance with the statute in all the essential points, and altogether unexceptionable on the ground objected.

It is next claimed by the appellee's counsel that the second deed, viz, for lot No. 6, is bad for misdescription and uncertainty. This lot, No. 6, in that part of the town of Parkersburg known as Harris' Addition, is so described in the commissioner's book, and auditor's lists of lands and lots certified to the sheriff for sale; and was sold by him and described in the same manner, and the taxes and damages thereon delinquent correspond throughout, in the tax list, the auditor's list, and the sheriff's report of sale and the tax deed from the clerk to the purchaser, Robert S. Smith. But in reciting the listing, delinquency and sale as aforesaid, and describing the lots as conveyed, it is called "part of out lot No. 6, Harris' Addition to the town of Parkersburg," instead of "lot No. 6." But the reference made in the deed to the commissioner's book, the auditor's list and the sale by the sheriff and his receipt to the purchaser and the amount of taxes and damages charged thereon, all show that the lot intended was not part of out lot No. 6, there being none such, but the whole of lot No. 6; and the mistake being patent on the face of the deed and the record therein recited and referred to, and the deed itself being headed as "deed from clerk to R. S. Smith, for lot No. 6, in Harris' Addition."

There can be no doubt of the true intent and meaning of the deed. The inspection shows, even, how the draftsman fell into the mistake, in using the words "part of out lot No. 6," instead of the words "lot No. 6," to describe the lot bought by Smith and thereby intended to be conveyed. And the reference to the tax list, the auditor's list and sher-

iff's report and receipt for sale of lot No. 6, and the amount of taxes and damages due thereon and the price paid by R. S. Smith, all show beyond all doubt, that the lot so conveyed and intended to be conveyed was not a part, but the whole of lot No. 6; and the objection therefore to its validity for that cause is without foundation. The statute makes the deed *prima facie* valid to pass the title, notwithstanding any irregularity in the proceedings under which the grantee claims title, unless such irregularity appear on the face of the proceedings. The proceedings are all regular, viz, the whole of lot No. 6 and not a part was charged on the commissioner's book. The whole was certified by the auditor as delinquent for sale. The whole was sold and reported by the sheriff, and bought by Smith and receipt given him by the officer for the same, as required by the statute; and the recitals and contents of the deed show on the face thereof, that the whole and not a part was intended to be conveyed and was actually conveyed, notwithstanding the mistake of the clerk in calling it "part of out lot No. 6," instead of "lot No. 6," and therefore no such irregularity appears on the face of the proceedings as would invalidate the deed.

It is said that the appellant, Smith, had not complied with the requirements of the 3rd section of the act of December 9th, 1863, providing for appraisement of property, and could not, therefore, require the appraisement of the lots in question before the sale.

But the record shows that the appellant, Smith, on the 12th day of February, 1864, before J. K. Leonard, recorder of Wood county, took the oath required by law, as a justice of the township of Parkersburg in said county, among which oaths so taken is included the oath required by sec. 3 of the said act of December 9th, 1863. By the act of January 26th, 1863, sec. 6, the oaths of a justice are required to be filed with the recorder of the county, and the record of the case contains a certified copy of said oaths from the recorder's office of Wood county, attested by the recorder. This, in my opinion, shows that the appellant, Smith, did take and file in the office of the recorder the oath required

by the said act. When he took and subscribed the oaths required, before the recorder in his office and left it there, he had done all he could and all the law contemplated to be done by him, in taking and filing the same in the proper office. The duty of the officer was to file away and preserve it among the records and papers of his office and if any endorsement of filing was to be made thereon, that was for the officer and not for the affiant. It would not do for parties to make entries or endorsements on office papers after they were once left in the office where the law required them to be filed. But it is a mistake to suppose that to take and file an oath in writing in the recorder's office, means any endorsement on the affidavit by the party or officer, but the leaving it with the officer, whom the law makes the custodian thereof, and the preserving it in order by the officer, to be ready for inspection by all having a right to see the same, is in law, what is meant by filing the same in the proper office. I think, therefore, that the appellant, Smith, was in a condition to insist on the provisions of the appraisement law. I think the decree of the court below has done substantial justice between the parties, and regret that the conclusion to which I have come, upon the law of the case makes it necessary to disturb it; but since in the view I have thus taken of the statute in its application to this case, I can see no sufficient ground to warrant the court in declaring it void, as respects the case under consideration. And since the act requires an appraisement before the sale, which was not done, and cannot be satisfied by an appraisement after the sale, I should be constrained to conclude that the decree should be reversed, the sale set aside, and the cause remanded to the circuit court of Wood county to be there further proceeded with in conformity to the views here expressed, but for the following considerations; a re-sale after appraisement might and probably would produce a less price than in the former sale; it would be attended with additional costs, which would also be a tax on the proceeds of the sale; unnecessary delay would be incurred, and the appellant the party really prejudiced by it; while the present proceedings

and decree have attained substantial justice and all that could be attained by a resale. It would be rather technical than material to reverse the case under such circumstances. On the whole, therefore, I think the decree of the circuit court should be affirmed.

MAXWELL, J. Such title only is vested in the purchaser at a tax sale as "was vested in the party assessed with taxes at the commencement of the year for which the said taxes were assessed." The legal title to the property conveyed in trust by E. W. Lewis, passed to Shaw, the trustee, by the deed of trust, the equity of redemption only remaining in the said grantor.

The purchaser for delinquent taxes in this case, if the sale were in all respects regular, would only acquire a mere equity of redemption, subject to the payment of the debt due the appellee.

The sale and conveyance of the lot described as part of "out lot No. 14," seem to be regular, and I think all the title of the said E. W. Lewis passed to the purchaser at the tax sale. But I am of opinion that the deed made by the clerk to the purchaser of the lot described in the deed as "part of out lot No. 6," is void for uncertainty and that nothing passed by it, not even the equity of redemption of the said grantor in the deed of trust. It is impossible, it seems to me, to identify from any description contained in this deed, what is intended to be conveyed by it; nor is reference made by it to any description of the property intended to be conveyed by which it can be identified. It is not, however, material to the case whether the equity of redemption in this lot remains in Lewis, the grantor in the deed of trust, or passes to the purchaser at the tax sale, because in either case it is liable for the payment of the debt of the appellee. The only difference is that it should have been sold for the debt before lot No. 14 was sold, but as it did not sell for sufficient to pay the debt, and it would have been necessary at any rate to sell "part of out lot No. 14" to pay the residue of the debt, it can not be to the prejudice of the appellant

that both lots were sold at the same time, and the surplus money arising from the sale thereof, after paying the debt, interest and costs, paid to the said appellant.

I do not think the question that the property was not appraised before it was sold, "fairly arises upon the record of the case."

The third section of the "act providing for the appraisement of certain property," Acts 1863, p. 244, provides that "no defendant shall be entitled to the benefits of the provisions of this act, who shall not before the day of such sale take and file in the office of the recorder of his county the oath," &c. It does not appear from the record in this case, that the defendant below took and filed the required oath in the recorder's office of his county before the sale was made. It does appear that he took the required oath before the sale but it does not appear that he filed it according to the act, before the sale. Until this section is strictly complied with, no defendant has any right to demand the appraisement of his property before it is sold.

I am of opinion that the decree appealed from should be affirmed.

DECREE AFFIRMED.