# WHEELING.

## SUMMERS v. COUNTY OF KANAWHA.

Submitted Sept. 13, 1883.—Decided July 3, 1885.

1. The purchaser of land sold for taxes, who has obtained his tax deed therefor, and had the same duly recorded in the proper •county, becomes invested with such estate in and to the land so purchased by him, as at the commencement of, or at any time during the year for which the said taxes were assessed, was vested in the party assessed with said taxes.  (p. 172.)

2. If at the time of such sale the land sold be under a mortgage or deed of trust, or if there be any other lien or incumbrance thereon, and such mortgagee, trustee, cestui que trust, lienor or incumbrancer shall fail to redeem the same within the time prescribed by law, then all the right, title and interest of such mortgagee, trustee, cestui que trust, lienor or incumbrancer, shall pass to and be vested in the purchaser at such tax-sale, and his title to the premises shall in no way be affected or impaired by such mortgage, deed of trust, lien or incumbrance.  (p. 172.)

3. Where land has been so purchased by and conveyed to the purchaser, and his tax-deed therefor has been duly recorded, and before the land was so sold, it had been conveyed to a trustee to secure the payment of a debt, such tax-deed will extinguish the title vested in such trustee by said deed of trust.  (p. 173.)

4. Where the trustee in such deed of trust pretends to sell and convey the land so conveyed to him as trustee under the provisions thereof, after the said land has been sold for the delinquent taxes thereon, and the purchaser thereof at such tax-sale has obtained and duly recorded his tax-deed therefor, such pretended sale and

conveyance of said land by such trustee will be inoperative and void. (p. 173.)

5. Where a debt is secured by a deed of trust upon the land of the debtor, not in the possession of the creditor, who is not otherwise interested in the said land, such creditor is under no obligation to pay the taxes upon said land in the absence of any covenant, promise or agreement to do so. (p. 170.)

6. Where such trust-creditor is neither in possession of the lands charged with such trust-debt nor·bound by any covenant, promise or agreement to pay the taxes thereon ; and where no relation of trust or confidence between him and the trust-debtor exists, he is not precluded from acquiring at a tax-sale the title to the land conveyed by said deed of trust to secure the payment of his trust debt. (p. 171.)

7. Where a trust-creditor, whose debt is secured by a deed of trust upon a tract of land liable to be sold for the non-payment of the taxes thereon, instead of paying such taxes or redeeming the land from the purchaser at a tax-sale thereof becomes himself the purchaser thereof in his own name or in the name of another acting as his agent for that purpose, he will be regarded as having elected to hold the land as such purchaser, subject to all the advantages and disadvantages pertaining to his character as such ; and he will not be permitted to treat his purchase at the tax-sale as a payment of the taxes, or a redemption of the land without the consent of his ~~creditor~~ *debtor*. (p. 170.)

8. Where a tract of land has been sold for taxes, and after such sale, and before the title of the purchaser has become absolute, the county court of the county, in which the land lies, has by proper proceedings regularly established a public road over said land without compensation with the consent in writing of the owner thereof in fee, and such purchaser afterwards obtains a tax-deed for said land and has the same duly recorded, such tax-deed will not confer upon him any right to demand and recover any compensation for the land so appropriated for· such public road ; and if such purchaser afterwards conveys said land to a third party, his deed to such *third* party will not confer upon him any right to such compensation or damages. (p. 174.)

The opinion of the Court contains a sufficient statement of the facts :

*W. A. Quarrier* and *W. S. Laidley* for the plaintiff in error.

*J. H. & J. F. Brown* for defendant in error.

WOODS, JUDGE :

On November 4, 1878, Lewis Summers filed his petition in the county court of Kanawha county, alleging, that on Feb-

ruary 10, 1871, he sold and conveyed to J. B. Walker a tract of land containing 160 acres, at the price of $40,000.00; that to secure the payment of the unpaid purchase-money, viz: $37,000.00, with interest from that date, the said Walker on the same day, conveyed said land to W. S. Laidley, in trust, with power to sell, in case default should be made in the payment of any of the instalments of said purchase-money; that the county court of Kanawha county, on November 2, 1875, without his knowledge or consent, established through said land, a public road, and that nothing has ever been paid, or tendered to him, or to said Walker, or to any other person for said road; that on February 17, 1877, the trustee Laidley, by virtue of said trust-deed, sold the 160 acres of land, for the purpose of collecting the unpaid purchase-money; that the proceeds of the sale, were insufficient to pay the same, leaving a deficit of $13,747.67 due to petitioner, which remains unpaid. Petitioner further alleged that he is now, and he has been since the sale under the said trust-deed, the owner in fee of the 160 acres of land; that said public road is part and parcel of said land, and the same is now held, owned and controlled as a county road; and he prayed that a writ of *ad quod damnum* be awarded to him, directing a jury to go upon the land and say what amount shall be paid petitioner by said county for the land taken for the road, and damages done to the residue of his land. The county answered the petition, and denied petitioner's right to the writ of *ad quod damnum*, even if the matters alleged in his petition were true; *first*, because such a lienor as petitioner claims to be, is not entitled to compensation for land appropriated for a county road, on which the lien may exist; and *second*, because the alleged lien on the land was, at the time the road was established, extinguished, as the 160 acres of land was on October 21, 1875, sold by the sheriff of Kanawha county to Wm. H. Hogeman for the non-payment of taxes assessed thereon for the year 1873, in the name of J. B. Walker, and the same not having been redeemed was conveyed by the clerk of the county court of Kanawha county to said Hogeman, by deed dated November 28, 1876, and recorded in the clerk's office of said county court on the same day; and *third*, because after the alleged tax-sale, the trustee

W. S. Laidley dedicated said road to the public, which dedication was afterwards ratified and confirmed by said petitioner. To this answer Summers replied, denying the alleged ratification, and alleging in substance that he furnished the money to Hogeman to purchase said 160 acres of land, and directed him to purchase the same, which he did; that he paid all the costs and expenses in making the report of the surveyor, and for the deed to Hogeman for said land, and for making the deed and transfer from him to petitioner; that he conveyed the land to petitioner by deed dated November 29, 1876; that Hogeman out of his own money paid nothing for said land, but for this purpose he used the money of petitioner, and was acting for petitioner as his agent; that the sale was neither more nor less than a redemption by petitioner of the 160 acres of land; that the same was so treated by petitioner and Hogeman, and that petitioner afterwards proceeded to enforce his trust-lien, by selling the land at public sale, at which he became the purchaser thereof.

The county court on the trial of the cause, refused the writ of *ad quod damnum* and dismissed the petition. To this ruling of the county court, the petitioner excepted and tendered his bill of exceptions certifying the facts proved on the trial which are as follows: On February 10, 1871, Lewis Summers and wife, by deed of that date sold and conveyed to J. Brisben Walker, a tract of land in Kanawha county containing 160 acres, and for the unpaid purchase-money thereof he executed to Summers eight notes of that date for the following amounts: One for $1,974.00, and two for $2,220.00, each payable respectively on January 1 in each of the years 1872, 1873 and 1874; and five for $7,400.00 each payable respectively, on January 1, in each of the years 1874, 1875, 1876, 1877 and 1878, with interest on said last five notes from January 1, 1874, until paid. To secure the payment of these notes, as they should fall due, said Walker by deed dated February 10, 1871, conveyed said 160 acres of land to W. S. Laidley, trustee, with power to sell for cash to the highest bidder, so much of said land as might be necessary to pay off and discharge so much of said debts as might then be due and remain unpaid. On September 1, 1873, the said Walker conveyed the 160 acres of land together

with 110 acres purchased from James L. Carr, and 90 acres purchased from Holly Hunt, to the West Charleston Extention Company. These lands adjoined each other and also the city of Charleston, and had been laid off by J. B. Walker into streets, alleys and town lots, as an addition to the extension of that city. These three tracts, described as one tract of 370 acres, were entered upon the assessor's land-book of Kanawha county for the year 1873 in the name of said Walker, and were assessed with taxes for that year amounting to $883.40. In the year 1874, a tract of 210 acres, part of said 370 acres was entered upon said land book in the name of the West Charleston Extension Company and assessed with taxes thereon for that year amounting to $552.19 and both of said tracts embraced and included said 160 acres These lands were returned delinquent for the non-payment of said taxes, and on October 21, 1875, were sold by the sheriff of said county and at such sale William H. Hogeman became the purchaser of the 370 acres at the price of $1.210.90, and of the 210 acres at the price of $716.60, and not having been redeemed the clerk of the county court of Kanawha county, by deed dated November 28, 1876, conveyed to Wm. H. Hogeman the tract of 370 acres sold in the name of J. B. Walker, for the taxes delinquent thereon for the year 1873, and by similar deed, dated December 14, 1876, he conveyed to said Hogeman the tract of 210 acres, sold in the name of The West Charleston Extension Company, for the taxes delinquent thereon for the year 1874, both of which deeds were duly recorded in the clerks office of the county court of Kanawha county, on the days of their respective dates. On November 29, 1876, Wm. H. Hogeman, by deed of that date, conveyed with covenants of special warranty, to said Lewis Summers, the tract of 160 acres, and to Holly Hunt, the tract of 90 acres of land, having on April 17, 1876, by deed of that date, conveyed his equitable title in the tract of 110 acres to Wm. A. Quarrier, as trustee for James S. Carr. On November 2, 1875, the said county court by proceedings regularly had therein, with the consent in writing of The West Charleston Extension Company, and without compensation, established a public road through said 160 acres of land. On February, 17, 1877,

the trustee, W. S. Laidley, under the provisions of said deed of trust, sold said 160 acres in parcels, all of which were purchased by said Lewis Summers at the aggregate price of $21,000.00, and conveyed the same to him on the same day, leaving unsatisfied of the trust-debt, a balance of $13,747.67. On March 7, 1877, said Hogeman executed to said Summers a second deed, conveying to him the tract of 210 acres purchased by him at said tax-sale, on October 21, 1875, for the taxes delinquent thereon in the name of The West Charlestom Extension Company. The money used by Hogeman in purchasing the 370 acres of land sold by the sheriff of Kanawha county, on October 21, 1875, was furnished to him for that purpose by said Summers and Hunt, he acted for them, as their agent in making said purchase, and they paid the expenses of making the reports, deeds, &c., to and from Hogeman, in connection with said sales, and nothing was paid by Hogeman for said land, or to him for the conveyances made by him to Summers, Hunt and Quarrier, and that the road is now used as a public road, and runs through the 160 acre tract of land. To the judgment of said county court denying the writ of *ad quod damnum*, and dismissing his petition, Lewis Summers obtained a writ of error from the circuit court of Kanawha county, and upon the hearing thereof the judgment of said county court was, on May 26, 1880, by said circuit court, affirmed with costs. From this judgment of the circuit court, a writ of error has been allowed by this Court. On the hearing of the writ of error in the circuit court, three grounds of error were assigned, and the same are relied upon here, with the additional one, that the circuit court erred in affirming the judgment of the county court. It is insisted by the plaintiff in error, that the county court erred. *First*, In deciding that Summers had not shown himself entitled to any compensation or damages. *Second*, In refusing to award him the writ of *ad quod damnum* as prayed for ; and *third*, in dismissing his petition.

It will be unnecessary to consider or decide the question discussed by the counsel for the defendant in error, whether the plaintiff in error, in his character of a lien-holder, is, under the constitution and laws of this State, entitled to compensation or damages when part of the land subject to the lien has

been dedicated without compensation by the owner thereof for a public use.

The petitioner rests his right to the writ of *ad quod damnum* upon the ground that he was at the time of filing his petition, and ever since the sale of said land, under said trust-deed on February 17, 1877, the owner in fee of said 160 acres of land, of which said public road is a part, and that the same was established without his previous consent or subsequent ratification, and without any compensation therefor ever having been paid or tendered to him, or to Walker, or to any other person. It will be observed that the petitioner does not aver, that he became the owner in fee of said land by virtue of the sale and conveyance made to him by the trustee, Laidley, under said deed of trust, but only, that he has since that time, been such owner in fee. For aught that appears in his petition, he may have become the owner thereof in fee, in various ways *before* February 17, 1877, when the same was sold and conveyed to him by the trustee, Laidley. This is one of the grounds of defence relied upon by the county court in its answer, and is fully proved by the evidence, as well as by the admission of the petitioner in his replication.

The answer of the defendant in error to said petition, denied the petitioner's right to the writ of *ad quod damnum,* because the petitioner neither at the time the said road was established, nor at the time of filing his petition had any valid subsisting lien on said land, as the same had been lost and extinguished by virtue of the fact, that this land which had been conveyed from Walker to Laidley, trustee, had been on October 21, 1875, sold for the non-payment of the taxes assessed thereon in the name of Walker, for the year 1873, by the sheriff of said county to said Hogeman, which not having been redeemed was conveyed to him by the clerk of the said county court by deed dated November 28, 1876, and on the same day recorded in the office of the clerk of the county court of said county.

These facts are not controverted; but in order to break their force, the petitioner, Lewis Summers, by his replication alleged, and on the trial proved, that in making the purchase, and in obtaining from the clerk of the said county

court the deed for the 370 acres, which included the 160 acres, William H. Hogeman acted as the agent of petitioner, so far as the tract of 160 acres was concerned, and that the purchase-money paid therefor, and all expenses incurred in obtaining the deed, and making the transfer to petitioner of the 160 acres, were by him furnished to Hogeman, who of his own money paid nothing for the land, and received nothing for the conveyances made by him to Hunt, Summers, or Quarrier, trustee.

We are not called upon to determine what may be the effect of this transaction, in a controversy between the petitioner and J. Brisben Walker or his vendee the West Charleston Extension Company, as no such controversy appears. So far as this record shows, no person claiming this land, or any title thereto, or interest in, or any lien or incumbrance on the same, is attempting to controvert the right of the petitioner to purchase the 160 acres of land at the tax-sale, either in his own name, or in the name of another acting as his agent for that purpose; nor is any one controverting the legal proposition, that by the tax-sale to Hogeman he thereby acquired every right, title or interest in and to the land, which, by virtue of the provisions of ch. 117 of the Acts of the Legislature of 1872 and 1873 could be so acquired, by any *bona fide* purchaser, even though he acquired the same for the benefit of another, to whom he afterwards conveyed the land. The petitioner had a direct and plain remedy to prevent the sale of the land by paying the taxes; he had a remedy equally plain and direct to prevent the purchase of Hogeman from becoming absolute by redeeming the land at any time within one year from the day of said sale. A resort to either of these remedies would have preserved to petitioner the security for his debt afforded by his deed of trust; but in that case the equity of redemption in Walker or the West Charleston Extension Company would also have been preserved to it, while by a tax-sale of said land to a stranger, the land itself and the trust-lien thereon, as well as the equity of redemption might all be lost. The petitioner had the right to elect which of these remedies he would adopt; and he elected to become a purchaser of the land at the tax-sale, with all the advantages incident thereto,

and having made this election, and secured to himself these incidental advantages, it seems reasonable and just that if any disadvantages attached to such election he should be held to have elected them also; and especially so, if they who were thereby divested of their equity of redemption in the property so purchased, made no objection to his purchase.

What then was the legal effect of the sale and conveyance made to Hogeman of the 160 acres of land, upon the right of J. B. Walker, The West Charleston Extension Company, W. S. Laidley, and the petititioner? On January 1, 1873, the legal title to the 160 acres of land was vested in the trustee W. S. Laidley, to secure to petitioner the payment of his trust-debt, as the several instalments thereof should become payable, and the equity of redemption therein, as well as the actual possession of the land were in Walker, and after September 3, 1873, in the West Charleston Extension Company. The taxes for that year were assessed in the name of Walker and for the non-payment of these, the land on October 21, 1875 was sold to Hogeman.

The 29th chapter of the Code of 1869 then prescribed the time when, and the mode in which all real and personal property subject to taxation, should be assessed, and designated the persons whose duty it was to pay the taxes thereon. By the 39th section of that chapter the assessment of taxes was to date as of the first day of April, and it was made the duty of the assessors to begin on that day and proceed without delay to ascertain all personal and real property subject to taxation in his district, and said section declared that "the taxes for each year, upon real and personal property shall be paid by those who are the owners thereof on that day, whether it be assessed to them or to others." By the 40th section of that chapter it is declared that "the person who by himself or his tenant has the freehold in possession whether in fee or for life shall be deemed the owner for the purpose of taxation;" and that "a person who has made a mortgage or deed of trust to secure a debt or liability, shall be deemed the owner, until the mortgagee or trustee takes possession, after which such mortgagee or trustee, shall be deemed the owner." By the 49th section of the same chapter, it was in substance declared, that all personal property, including debts

of every kind, owing to any person, whether due or not due, secured or unsecured, was required to be listed for taxation by such person or some one for him. For the year 1873 Walker, as owner of the 160 acres of land was chargeable with, and bound to pay the taxes for that year assessed thereon, and Summers as the owner of the debt secured by said deed of trust was chargeable with, and bound to pay the taxes assessed upon the amount of the debt, and no liability rested upon either, to pay the taxes assessed upon the property of the other. The land was sold under the provisions of chap. 117 of the Acts of the legislature of 1872–3, the first section of which declares: " There shall be a lien on all real estate for the taxes assessed thereon from the day fixed by law for the commencement of the assessment of said taxes in each year, and interest upon such taxes at the rate of six *per cent. per annum* from the first day fixed by law for the payment of such taxes into the treasury until payment." The lien of the State for its taxes on the land for 1873, was superior to that of the deed of trust to Laidley, to secure the trust-debt to Summers, which was liable to be lost, if the taxes were not paid, Summers therefore, to the full amount of his trust-debt, and Walker, and The West Charleston Extension Company, to the extent of the full value of the land, were interested in having the taxes on the land paid. It was the duty of Walker, to pay these taxes, and thus protect the security afforded to Summers by his deed of trust; and his interest to do so, was still greater than that of Summers, for if the taxes were not paid, he was liable to lose the land and he would still be compelled to pay the trust-debt.

Although neither Walker, nor the West Charleston Extension Company has called in question the right of Summers to become the purchaser of the land at the tax-sale, either in his own name, or in that of Hogeman as his agent; yet desiring to claim the title to said land under the sale and conveyance made to him by the trustee Laidley on February 17, 1877, as well as under said tax-deed, his counsel has suggested in argument, that the purchase of the land at said tax-sale made by his agent, ought to be considered a payment of the taxes, or redemption of the land, rather than a purchase thereof. In this connection his counsel has suggested, that

Summers was precluded from acquiring the title to said land, at said tax-sale. It is admitted that some persons from their relation to the land or the tax, are precluded from becoming such purchasers. The title to be transferred on such a sale, is one based on the default of the person whose duty it is to pay the government the tax. "But one person may owe this duty to the government, and another may owe it to the owner of the land. This occurs where the tenant in possession of the land has obligated himself to pay the taxes. So the mortgagor remaining in possession owes it to the mortgagee to pay the taxes, and the general principle applicable in all such cases is, that a purchase made by one whose duty it was to pay the taxes, shall operate as a payment only ; for he shall acquire no right against a third party, by a neglect of the duty which he owed to such party. This principal is universal, for when the existence of the duty is shown, the disqualification is is made out. This rule applies where the default was only in part that of the purchaser, as where he was tenant in common with others ; or where his own land was taxed as one parcel with that of another, and the whole was sold together; and to a case where an agent to pay taxes, purchased the land of his principal, and assumed to justify himself on the ground, that his principal had neglected to furnish him money to pay the taxes. In all such cases, and in all cases to which like reasons apply, the purchase as *between the parties* is in law a payment only ; or if the purchase be made at second hand from another who was the purchaser at the public sale, it will be allowed for the purposes of justice, only as a payment." Cooly on Taxation, 345. A mortgager can not, by acquiring a tax-title upon the land, defeat the lien of the mortgagee, for it was his duty to pay the taxes, and he is not allowed to acquire a title through his own default. Where the taxes are paid by one who has merely a lien on the land, there was of course no obligation upon him to pay the taxes ; and although he may acquire the tax-title to protect his own lien, he will not be allowed to set up that title, to defeat a prior lien. A mortgagee may purchase the mortgager's equity of redemption. The relation between them is not so far analogous to that between a trustee and a *cestui que trust*, as to preclude the mortgager from purchasing. The trustee has a

duty to perform in selling for the best advantage of the beneficiary, and this is inconsistent with his personal interest, to obtain the property on terms advantageous to himself.

But there is no trust relation between the mortgagor and mortgagee. The mortgagee is under no obligation to protect the equity of redemption. The general rule is, that the mortgager may acquire the equity of redemption, either directly from the owner, or at a sale by his assignee in bankruptcy, or by his creditor upon execution. Jones on Mortgages, sec. 711–713; Desty on Taxation, sec. 146. The same principle was decided in *Waterson* v. *Devoe*, 18 Kan. 233, where the court held that a mortgager not in the possession of real estate, was under no obligation to pay the taxes on the mortgaged premises; and that the mere relation of mortgagor will not prevent the person so related from acquiring title to the mortgaged premises by purchase at a tax-sale. In that case, Waterson the mortgagee, neither had the actual possession nor the right to the possession as mortgagee of the premises. He was required to pay taxes on his note and mortgage, and when he discharged that duty, he performed his obligation, so far as his mortgage and note were concerned. He neither covenanted nor agreed to pay Devoe's taxes. On the contrary Devoe was under obligation to pay the taxes on the land, for it was his duty to protect the lien or security of Waterson, by payment of the taxes on the land, so that such lien should not be lost or destroyed by his negligence. Waterson did not step forward and redeem the property from sale, but he took the transfer of the tax-certificate, and afterwards got the tax deed. By this action on his part, he was elected to occupy the relation of purchaser, with all the rights and incidents which the law attaches to it. In *Chapman* v. *Mull*, 7 Iredell, Eq. 392, it was held that "the principles in relation to dealings between trustee and *cestui que trust* as adopted by courts of equity, do not apply to the case of mortgagor and mortgagee. Dependence and the duty of protection, are not involved in this relation, and they may deal with each other subject only to the ordinary principles, with this difference that the relation is a circumstance which always creates suspicion, and aids in the proof of an allegation of

oppressive and undue advantage, where there is gross inadequacy of price, and other circumstances tending to show fraud. In *Williams* v. *Townsend*, 31 N. Y. 415, Davis, Judge, delivering the opinion of the court said : "A mortgage is a mere security for a debt, and there is no such relation of trust or confidence between the maker and holder of a mortgage, as prevents the latter from acquiring title to its subject under his own or any other valid lien. The defendant had no duty to perform to the plaintiff, or toward the mortgaged premises, that precluded her from buying at the tax-sale. She was under no obligation to pay the taxes. She might pay them or not, as she chose, or she might stand upon her general rights and purchase at the tax-sale, as others could do, and she would take a redeemable interest only." In *Maxfield* v. *Willey*, 46 Mich. 253, however, it was held, that "When a mortgagee, instead of paying taxes due, purchases the land at a tax-sale, the mortgagor can treat the purchase as a payment, and compel the cancellation of the tax-certificate, on refunding the amount paid with interest; but it was further held, that such payment, can not, against the will of the mortgagor, be held a payment in his behalf; and Cooley, Judge, delivering the opinion of the court in that case, said "that when the mortgagee, instead of making payment of the taxes, makes a purchase of the land at the tax-sale, either in his own name or in the name of another person, who has his money for the purpose, we have no doubt of the right of the mortgagor to have the purchase treated as a payment and to compel the cancellation of the tax-certificate, or deed, on refunding the amount paid, with interest. But the right to treat the purchase as a payment is the *right of the mortgagor only*, and rests upon a principle of equity that it is *necessary for his protection.*"

In the case under consideration neither Summers nor his trustee, was in possession of the land; they had entered into no covenant or agreement with Walker or his vendee to pay the taxes on the land; no relation of trust or confidence existed between them; they were dealing with each other at arm's length, and while Summers had the right to pay the taxes on the land to protect his trust-lien, yet there was no legal or moral obligation resting upon him to do so. Under these circumstances

he was not precluded from acquiring at the tax-sale, the title to this land, which had been vested in Walker as his vendee. Until the tax-sale was made, every other person having a right to charge the land with the payment of the debt, had the right to pay the taxes and prevent the sale ; and after the sale was made, they still had the period of one year within which they had the right to redeem the land from Hogeman, by refunding to him the amount he had paid for the land and all taxes thereon subsequently paid by him with interest on the same at the rate of twelve *per centum per annum* from the time when he paid the same, but if not so redeemed within that time, the purchaser upon obtaining a deed for the land according to the provisions of said chap. 117 of the Acts of 1872–3 and recording the same in the office of the clerk of the county court of the county in which the land or the greater part thereof was situated, there was vested in him such estate in and to said land so purchased by him, as was at the commencement of, or at any time during the year or years for which the said taxes were assessed, vested in the person assessed with the taxes for which it was sold, and in any other person or persons having title thereto, who has not in his or her own name, been charged on the assessor's book of the proper county or district, with the taxes on said real estate, for the year or years, for the taxes of which it was so sold, and actually paid the same as required by law.   " And if, at the time of such sale, the lands sold, be under a mort gage or deed of trust, or there be any other lien or encumbrance thereon, and the mortgagee, trustee, *cestui que trust*, or person holding any such lien or encumbrance shall fail to redeem the same within the time prescribed by sec. 15 of said chap. 117, then, all the right, title and interest of such mortgagee, trustee, *cestui que trust*, and of the person holding any such lien or encumbrance on the land so sold, and not redeemed, shall pass to, and be vested in such purchaser, and his title to the premises shall in no way be affected or impaired by any such mortgage, deed of trust, lien or encumbrance." If Summers had paid the taxes on the 160 acres of land, the legal title thereto, would have been preserved to the trustee, and the equity of redemption to Walker, or his vendee; the deed of trust would have remained a valid security for the

trust-debt, and the right to charge the land with the payment of a debt would have been preserved to any one, who had the right to do so.  The rights of all persons having mortgages, deeds of trust, liens or incumbrances on the land, and the title of other persons thereto, would have been preserved to them, although they may have been so unfortunate as " not to have had the said land in their own name, charged on the assessor's book of the proper county, or district, with the taxes on the said land for the year or years, for the taxes of which the same was so sold, and *actually paid the same* as required by law."   The same beneficial results would have followed, if, at any time after the sale was made, and before the time for the redemption thereof had expired, Summers had redeemed the land from said Hogeman.  But when the title to said land became absolute in Hogeman, by obtaining and recording his tax-deed for the land, he stood invested with such estate in, and to said land, as, at the commencement of, or at any time during the year 1873, was vested in the said J. Brisben Walker, or in The West Charleston Extension Company, or in the trustee, W. S. Laidley, or in the said Summers, or " in any other person having title to said land who had not had the same entered on the said assessor's book in his own name, and assessed with the taxes thereon for the year 1873, and actually paid the same as required by law," free from all other mortgages, trusts, liens, and incumbrances thereon.   Thus, it will be perceived at a glance, that between the payment of the taxes, or a redemption of the land, and the purchase thereof, at a tax-sale for the non-payment of the taxes, there is an immense advantage in favor of a purchase at such sale, because such a purchase, once made, and become absolute, all these statutory advantages incident thereto, attach to, and are inseparable from it.   We are therefore of opinion, that when the purchase made by Hogeman of the 160 acres of land became absolute in him, he took the land free from the deed of trust and from the equity of redemption, unimpaired by the lien created thereon by said deed of trust, and that no title whatever remained in the trustee, Laidley, and hence nothing passed to Summers by the sale and conveyance made to him by said Laidley on February 17, 1877 ; and that whether said Hogeman made said

purchase in his own name, with his own money, and on his own behalf, or in his own name as the agent and on behalf of the said Summers and with his money, the legal effect and operation of his said purchase and deed were the same. By the deed from Hogeman to Lewis Summers dated November 29, 1879, the tax-title so acquired by him, with all of its incidental advantages and disadvantages passed to and vested in Summers and did not re-vest in said trustee, Laidley. Although the title to said land so acquired by Hogeman, related back to the commencement of the year 1873, and overreached all conveyances of the land thereafter made, and all liens and incumbraces created thereon, it does not follow that for any wrongful act done or injury committed to or upon said land, after the commencement of the year 1873 and before the title of the purchaser at the tax-sale had become absolute whereby the estate of the owner in said land had been rendered less valuable, that a right of action for the recovery of damages for such wrongful act, would pass to him by virtue of his purchase at such tax-sale; nor does it follow, that said Hogeman who at the time the public road was established through said land had only a redeemable interest therein, thereby became or was such owner or tenant of the freehold, as transferred to, or vested in him a right of action against said county, for the value of the right of way over the land so dedicated and given by the owner thereof to the public for the public road, and for damages to the residue of the tract. If such right attached to the purchaser of land at a tax-sale, great public inconvenience would result, for it would follow, that in any case where private property was taken for public use, and the compensation therefor had been ascertained and paid to the owner of the land, and such land should at that time have been assessed with taxes for the non-payment of which the land should be afterwards sold, the purchaser at such sale, would be entitled to compensation for the land so taken, and damages to the residue of the tract, and he would not be barred of his recovery by the previous payment to the owner, because, in such a case, the damages would have been paid to the wrong person, that is, to the owner of the land, and not to the person who subsequently became the purchaser thereof

at the tax-sale. But if it could be held, that Hogeman did in fact acquire such right, by his purchase, it is quite certain that no such right was conveyed to Summers by the deed from Hogeman, and as he did not acquire the same by his purchase and conveyance from the trustee, Laidley, it follows that the plaintiff in error at the time of filing his petition in the county court of Kanawha county was not entitled to demand or receive from said county any compensation or damages for the land alleged to have been taken for said public road; and that he was not entitled to the writ of *ad quod damnum* prayed for in his petition. We are, therefore of opinion, that there was no error in the judgment of the circuit court of Kanawha county, rendered in this cause on May 26, 1880, and the same is therefore affirmed with costs and $30.00 damages.

AFFIRMED.