TRESSLER COAL MINING COMPANY *v.* JULIUS KLEFELD *et al.*

(No. 9381)

Submitted January 13, 1943. Decided February 2, 1943.

ROSE, JUDGE, absent.

*Wm. T. George,* for appellant.
*Tusca Morris* and *Robert C. Morris,* for appellee Julius Klefeld.

LOVINS, JUDGE:

The Tressler Coal Mining Company prosecutes this appeal from a final decree of the Circuit Court of Barbour County, entered on March 5, 1942, dissolving a temporary

injunction and dismissing defendants, Julius Klefeld and H. H. Rose, Trustee, from the cause. The questions herein arise from proceedings following a remand of the cause by this Court upon a prior appeal.

In 1935, the Tressler Coal Mining Company instituted this chancery suit in the Circuit Court of Barbour County for the purpose of enjoining the sale of two tracts of coal upon which it held a lease for mining purposes, the two tracts being part of nine tracts of coal conveyed to H. H. Rose, Trustee, in 1925, to secure an indebtedness of $25,000.00, evidenced by notes. The holder of the notes transferred the same to Julius Klefeld, who, in 1928, agreed in writing to the execution of a mining lease by the deed of trust debtor to S. B. Tressler; in 1934, Tressler assigned his rights thereunder to plaintiff. This injunction suit followed the Trustee's advertisement for sale of the leased tracts, at the direction of Klefeld. From a decree dissolving a temporary injunction which had been issued at the time of the filing of the bill, the coal company appealed, and on February 1, 1938, this Court reversed that decree and remanded the cause for further development, on the principal ground that the leased tracts were "protected in equity from the operation of the deed of trust until recourse is had to the unleased tracts, in the absence of a showing that the unleased tracts are unavailable for sale under the deed of trust." *Tressler Coal Mining Co. v. Klefeld, et al.,* 119 W. Va. 567, 195 S. E. 202.

Upon the remand, Klefeld filed an amended answer in which he alleged that the seven unleased tracts were unavailable for sale under the deed of trust; that one tract had been released for valuable consideration applied on the trust debt, prior to the execution of the mining lease to Tressler; that the other six tracts had been sold both to the State and individuals in 1929 for nonpayment of 1927 taxes, without Klefeld's knowledge, and that he had lost all rights of redemption. By demurrer and special replication to the amended answer, the coal company asserted that Klefeld had wrongfully created the unavailability alleged therein, the replication pleading equitable estoppel. The demurrer to the amended answer was overruled

and Klefeld's demurrer to the special replication was sustained. After depositions were taken, certain facts stipulated and exhibits filed on the issues thus raised, a final decree was entered which found that: (a) Royalties from the coal company's development of the leased tracts had not been applied on the notes secured by the deed of trust as provided in the lease and the Klefeld agreement for the execution of the lease; (b) all the minable and merchantable coal, as described in the lease, had not been removed; and (c) that the other seven tracts covered by the deed of trust were unavailable for sale thereunder through no failure of duty on the part of Klefeld.

By the terms of the Tressler lease, the lessee is required to pay lessors or assigns a royalty of fifteen cents on each ton of coal mined, with a specified yearly minimum royalty of $1,500.00; it also provides that lessee is not required to mine "any area where the coal seam is less than FIFTY (50) INCHES in thickness, or is faulty making it unreasonably hard to mine, or where the coal is not merchantable", and that when all coal has been mined from the leased premises, except 20,000 tons, further payment of royalty would not be required. In the written agreement of 1928, by which Klefeld consented to the execution of the lease by the deed of trust debtor, the following appears: "It being understood that the royalties due under said lease are to be paid to the said undersigned in discharge of said indebtedness and the interest thereon until the same is paid off by said royalties or otherwise."

On this appeal the coal company contends that it was error to overrule its demurrer to Klefeld's amended answer; that it was error to sustain the demurrer to the coal company's special replication to the amended answer; that the record is without evidence to warrant the finding that all the royalties were not applied on the notes held by Klefeld; that no finding was made as to the existence of a seam of coal over fifty inches in thickness, and, therefore, it could not properly be held that minable and merchantable coal remained in the premises, and that the finding of unavailability of seven tracts through no failure of duty on the part of Klefeld ignores Klefeld's duty to

protect the security for payment of the debt; and that Klefeld should not have recourse to the two tracts held by the coal company under its lease.

The findings of the trial chancellor as to the unavailability of the seven tracts, his rulings on the demurrer to Klefeld's amended answer and on the demurrer to the special replication of the coal company are interrelated and will be discussed together. The opinion of this Court on the former appeal, *Tressler Coal Mining Co. v. Klefeld, et al., supra,* states the law of the case. *Kaufman v. Catzen, et al.,* 108 W. Va. 1, 150 S. E. 371. On the first appeal there was no pleading or proof to show the unavailability of the seven tracts. It was there reasoned that such showing was necessary before Klefeld could have recourse to the two leased tracts for satisfaction of his lien. On remand it was made to appear by pleadings, proof and stipulation that the seven tracts are not available to Klefeld for the satisfaction of his lien, for the reason that they have been sold, one of the tracts having been sold at private sale prior to the date of the lease to Tressler, the proceeds of such sale in the amount of $9,531.21 being applied on the indebtedness due Klefeld. The other six tracts were sold to various persons on account of nonpayment and delinquency of taxes levied and assessed against them. The tract sold at private sale was duly released of record, and the lien held by Klefeld was reduced in the amount of $9,531.21, as above stated, prior to the date of the lease from Hartley and wife to Tressler. For these reasons we see no prejudice to the coal company's rights, because of such private sale. The six tracts sold to satisfy delinquent taxes have been conveyed to the purchasers thereof, deeds of conveyance therefor are of record, and it seems to be admitted that they are not redeemable.

The appellant urges that it was incumbent upon Klefeld to pay these taxes and that his failure to do so prevents him from recourse to the two remaining tracts held by Tressler under his lease. The amended answer of Klefelds pleads the private sale and tax sales. The coal company's special replication to such amended answer likewise avers such sales, and also that it was Klefeld's

duty to protect his security by the payment of the taxes. Klefeld was not in possession of the tracts of coal conveyed to secure the payment of the debt held by him, nor interested therein otherwise than as a lienholder. The provisions of the deed of trust relating to payment of taxes give Klefeld the right to pay the taxes on the property thereby conveyed, but impose no obligation on him to do so, nor is such obligation imposed by law. *Summers* v. *County of Kanawha,* 26 W. Va. 159; *Beckwith* v. *Seborn,* 31 W. Va. 1, 5 S. E. 453. Klefeld was merely the holder of the lien and occupied no fiduciary relationship to the coal company. *Summers* v. *County of Kanawha, supra; Beckwith* v. *Seborn, supra.* It therefore follows that the allegations of Klefeld's amended answer meet the requirements of the decisions of this case on the first appeal, and the proof in support of the allegations of the amended answer, being in no way controverted, removes any bar to Klefeld's right of recourse to the two tracts of land under lease to the coal company. We observe that the amended answer of Klefeld did not pray for affirmative relief, and hence the special replication of the coal company should not have been filed. *Wick* v. *Dawson,* 48 W. Va. 469, 37 S. E. 639. The plaintiff should have filed an amended bill of complaint to meet any new matter of defense set up in Klefeld's amended answer. *Ward* v. *Ward,* 50 W. Va. 517, 40 S. E. 472.

The finding of the trial chancellor that all royalties were not applied to the notes held by Klefeld, as provided in the lease executed by Hartley and wife to Tressler, does not fix any amount not so applied. The lease executed by Hartley and wife to Tressler provides that a minimum royalty of not less than fifteen hundred dollars a year shall be paid during the "terms of the lease". It is not controverted that a part of the royalties were applied on taxes assessed against the leasehold estate, and that the last payment was made to Klefeld in August, 1931. However, we do not deem the finding of the trial chancellor with reference to the application of royalties controlling, because there are other points upon which the determination of this cause must rest.

The finding of the trial chancellor as to the amount of minable and merchantable coal unmined makes no reference to the thickness of the coal seams wherein such unmined coal is situate. Minable coal has been defined as "coal which could be profitably mined by judicious methods." *Atwater & Co.* v. *Collieries Co.,* 119 W. Va. 549, 195 S. E. 99. Merchantable coal has been defined as "coal which was ordinarily used, for sale, and could be usually sold at a profit". *Atwater & Co.* v. *Collieries Co., supra; Big Vein Pocahontas Coal Co.* v. *Browning,* 137 Va. 34, 120 S. E. 247. Minable and merchantable coal is coal so situate that it may be profitably mined and of such quality as to be salable. *Ellis* v. *Cricket Coal Co.,* 166 Iowa 656, 148 N. W. 887. The lease under which the coal company claims does not require all minable and merchantable coal to be mined, but excepts coal where the seam is less than fifty inches in thickness, faulty and unreasonably hard to mine and unmerchantable. From this provision of the lease, regardless of the quality of the coal, it is only reasonable to say that the coal company is not required to mine minable and merchantable coal located in a part of a seam which is less than fifty inches in thickness, but it is not necessary that the decree evidencing the finding of the trial chancellor be explicit with reference to the thickness of the coal seams in determining the amount of the unmined coal as defined in the lease. The lease is exhibited with the bill of complaint, is an important part of the evidence, the decree refers thereto, and the witnesses testifying as to the amount of coal unmined, did so with reference to the thickness of the coal seam defined in the lease. The allegations of the pleadings relating to the quantity of unmined coal are predicated on the provision of the lease that coal to be mined thereunder should be fifty inches or more in thickness.

It will be readily disclosed on examination of the pleadings and testimony that the finding of the trial chancellor as to the coal which has not been mined refers only to coal fifty inches or more in thickness. Where there is an ambiguity in a decree, the pleadings and papers filed in the cause may be resorted to in determining the true meaning

of the decree. *Dudley* v. *Browning,* 79 W. Va. 331, 90 S. E. 878. We do not say that the failure in the decree to mention the thickness of the coal seams amounts to ambiguity. There may be doubt as to the meaning of the decree and finding, but such doubt is removed by an examination of the bill of complaint. *Jones* v. *Kuhn,* 94 W. Va. 415, 120 S. E. 888. The pleadings, exhibits, and depositions herein make it clear that the finding of the trial chancellor relates to coal situate in a seam fifty inches or more in thickness.

The finding as to the amount of coal remaining is also attacked on the ground that it is contrary to the weight of the evidence. A witness who had worked in the mine as foreman, a practical mining engineer, who made a survey of the mine, estimates that there are forty-nine thousand tons of merchantable and minable coal of more than fifty inches in thickness remaining on the premises. Another mining engineer testified that nineteen or twenty thousand tons of merchantable and minable coal are unmined. There is also testimony to the effect that the coal had mud seams, faults, and is impregnated with sulphur which makes it expensive to mine and of doubtful quality as a salable product. A recital of the foregoing shows that there is evidence to support the finding of the trial chancellor. We cannot say that his finding as to the amount of minable and merchantable coal remaining on the premises is clearly wrong. *Litz* v. *Bank,* 120 W. Va. 281, 197 S. E. 746.

The failure of the officers of the coal company to apprise Klefeld that all the merchantable and minable coal of the required thickness except twenty thousand tons has been exhausted, is an admitted fact, which supports the finding made by the trial chancellor. The coal company's officers should have taken this precaution, and prudence dictated that they notify the lessors and the holder of the lien that the coal had been exhausted except twenty thousand tons, thus giving lessors and Klefeld an opportunity to investigate the physical condition of the mine and determine that fact, if they so desired.

The coal company also complains that the decree is erroneous because of the omission of the requirement that the property be sold subject to the terms of the lease from

Hartley and wife to Tressler. The provision so omitted should have been incorporated in the decree, in order to prevent any misapprehension as to the nature and amount of the property to be sold. As hereinabove stated, the decree is to be read and interpreted in the light of the pleadings and proof, but we are moved to modify the decree by practical considerations rather than because of any requirement of law. Therefore, we modify the decree by incorporating therein a requirement that the two tracts of coal be sold subject to the terms of the lease executed by Hartley and wife to S. B. Tressler.

Perceiving no error, and in accord with the foregoing, we modify and affirm the decree, with costs to appellee.

*Modified and affirmed.*