CITY OF BECKLEY, *etc.*

*v.*

THEO HATCHER, *et al.*

(CC 782)

Submitted September 6, 1951.   Decided October 16, 1951.

170

Fox and GIVEN, JUDGES, dissenting.

*Robert J. Ashworth, James K. Edmundson,* for plaintiff.

*Benjamin D. Tissue,* for defendants.

LOVINS, JUDGE:

This suit comes to this Court on the certificate of the Circuit Court of Raleigh County. Its purpose is to enforce paving liens against three lots or parcels of land specially benefited by the paving of streets on which such lots are located.

The City of Beckley, a municipal corporation, who sues for the use and benefit of Investment Securities, Inc., a corporation, assignee of Vecellio and Grogan, Inc., a corporation, brought this suit against Theo Hatcher, Jennie Williamson, and J. H. Rucker, and, if the two latter persons are deceased, all of their unknown heirs at

law. The Circuit Court overruled a demurrer to a bill of complaint herein denominated an amended and supplemental bill. The following facts are alleged in the bill:

The City of Beckley, at an election held in such city on the 5th day of August, 1938, adopted statutory provisions relative to the paving of streets in municipalities. See Code, 8-9.

Lot 31 of the Wildwood Addition to the City of Beckley was conveyed to the defendant Jennie Williamson on October 7, 1913, and Lots 8 and 9 of Section 28 of the Central Addition to such city were conveyed to J. H. Rucker by deed dated August 20, 1926.

Lot 31 aforesaid was returned delinquent in the name of Jennie Williamson, for taxes due the State of West Virginia for the year 1926, and was sold to the State of West Virginia at the tax sale held by the Sheriff of Raleigh County in December, 1927. Lots 8 and 9 were returned delinquent in the name of J. H. Rucker, for taxes due the State of West Virginia for the year 1927, and were sold to the State at the tax sale held by the Sheriff of Raleigh County in December, 1928.

The Deputy Commissioner of Forfeited and Delinquent Lands of Raleigh County instituted a suit in the Circuit Court of said county on the 8th day of September, 1949, styled "State of West Virginia v. G. F. Barnard and others", in which J. H. Rucker was made a party defendant. One of the purposes of that suit was to sell Lots 8 and 9 for the benefit of the school fund. A similar suit was instituted on the 9th day of September, 1949, styled "State of West Virginia v. Elyadia Bassett and others", in which Jennie Williamson was made a party defendant. One of the purposes of that suit was to subject Lot 31 to sale for the benefit of the school fund.

Lots 8, 9, and 31 were decreed to be sold by the Circuit Court of Raleigh County on or about November 18, 1949, and the deputy commissioner; in accordance with the

decree of sale, sold the three lots on the 17th day of December, 1949, to Theo Hatcher. The sale as to Lot 31 was confirmed on January 12, 1950, and as to Lots 8 and 9 the sale was confirmed on February 20, 1950. The deputy commissioner thereupon executed and delivered to defendant Hatcher deeds of conveyance for the three lots.

The plaintiff in the instant suit derives its liens by reason of a paving project initiated on the 9th day of March, 1948, as to Lot 31, and in the month of August, 1949, as to Lots 8 and 9. After certain procedure, a contract was awarded for grading and paving the streets on which the three lots are situate. The grading and paving of such streets having been completed and accepted by the city, the cost of paving was apportioned to the lots specially benefited, including the three lots in question. After further proceedings, including examination and notice to interested parties, the council of the City of Beckley confirmed the assessments as to Lot 31 on July 26, 1949, and as to Lots 8 and 9 on October 8, 1949. The amount of such assessments as to Lots 8 and 9 is $1133.24 with interest from July 26, 1949, and as to Lot 31, $309.00 with interest from July 26, 1949. After the confirmation of such liens the same were recorded and indexed in the trust deed book in the office of the Clerk of the County Court of Raleigh County.

Thereafter, certificates of assessment were issued evidencing the assessments against said lots in the names of J. H. Rucker and Jennie Williamson, such certificates being payable to the order of Vecillio and Grogan, the contractors, who assigned them to plaintiff, Investment Securities, Inc., for a valuable consideration. The certificate of assessment against Lot 31 was assigned on August 5, 1949, and as to Lots 8 and 9, the certificate was assigned on November 2, 1949.

It is further alleged that on the 28th day of March, 1950, the council of the City of Beckley passed a resolution reciting the issuance of the assessment certificates against Lots 8, 9, and 31; that the certificates issued in the

names of J. H. Rucker and Jennie Williamson should be cancelled and surrendered; that new certificates be issued and delivered to the beneficiary of the certificates in place and stead of the original certificates so cancelled; that the re-issued certificates should be in the name of Theo Hatcher, the present owner of the three lots; and that the records in the office of the county clerk of Raleigh County should be corrected accordingly.

It is alleged by plaintiff that Theo Hatcher had no interest in the said lots at the time the original assessments were made; that the only person other than the State of West Virginia having an interest in said lots according to the records of the county clerk of Raleigh County were J. H. Rucker or his heirs as to Lots 8 and 9, and Jennie Williamson or her heirs as to Lot 31; that Rucker and Williamson, their heirs or assignees, were entitled to redeem the lots from sale by the State; and that these rights continued until the confirmation of the sales as decreed in the suits by the deputy commissioner of forfeited and delinquent lands. The paving had been completed, and the liens accruing from such paving had been recorded in the office of the county clerk of Raleigh County prior to the purchase of the land by Hatcher in December, 1949, and he purchased the lots with actual notice of the existence of the liens due the plaintiff as asserted in this suit.

The trial court of its own motion certified the following questions:

Was the equity arising from the lien claimed by the plaintiff extinguished by the sale made by the State of West Virginia to Theo Hatcher?

Is the reassessment made by the City Council of the City of Beckley dependent for its validity upon the existence of a valid lien, and if such lien has been extinguished by the sale of the property to Theo Hatcher, is the reassessment ineffectual?

The trial court held that the equity arising from the lien held by the City of Beckley had not been extin-

guished by the two suits instituted by the deputy commissioner of delinquent and forfeited lands of Raleigh County; that the reassessment made by the council of the City of Beckley was a proper exercise of power granted by the Legislature; and that the lien created by such reassessment was a valid and existing lien on the lots belonging to the defendant Hatcher.

The trial court also certified the following rulings which are subsidiary to the certified questions:

"1. * * * that it was within the power of the City of Beckley to levy against this property at the time when title thereto was vested in the State of West Virginia by virtue of a forfeiture for the nonpayment of taxes.

"2. That the City of Beckley was not a person who is entitled to redeem under provisions of Code 11-A-4-33 [sic], and that the City of Beckley was therefore by virtue of that section not deprived of any right or interest in the lot sought to be sold.

"3. That Investment Securities, Inc., the party in interest has the same rights as the City of Beckley in claiming a lien and has the same right to sell the lots described in the plaintiff's bill of complaint for the payment of the paving certificates."

The procedure in the two suits brought by the commissioner of delinquent and forfeited lands is not questioned and the legality of the sales of the three lots in question, ordered and confirmed in those two suits, is not challenged, except as hereinabove stated. Nor were the proceedings by the common council of the City of Beckley relative to the paving of the streets and creation of the liens objected to or challenged, except that defendant Hatcher contends that the City of Beckley is devoid of lawful authority or power to sell lands to enforce the paving liens, because of statutory provisions relative to sale of lands for the benefit of the school fund and the decisions of this Court in applying and interpreting such statutes.

Under the provisions of Section 10, Chapter 89, Acts of the Legislature, 1949, the property abutting on a street which is improved by paving is subject to a lien from the date the ordinance laying the assessment is passed. In this case the ordinances were passed on July 26, 1949, and October 8, 1949. On those dates the lots were the property of the State of West Virginia, having become irredeemable under the provisions of Section 8, Article 3, Chapter 160, Acts of the Legislature, Regular Session, 1947.

The State of West Virginia was the owner of an absolute title. *State* v. *Coal Company,* 130 W.Va. 1, 43 S. E. 2d 625. The former owners, under the provisions of the statute mentioned above, did not own the property against which the assessment was made, but only had the privilege of redeeming the same as a matter of grace. *State* v. *Blevins,* 131 W. Va. 350, 48 S.E. 2d 174; *State* v. *King,* 64 W.Va. 546, 63 S.E. 468. And they also have the constitutional right to distribution of the surplus of the proceeds of the sale. Sec. 5 of Article XIII of the Constitution of the State of West Virginia. The privilege of redeeming the land was ended upon the confirmation of the sale in the suits brought for the benefit of the school fund. See *State* v. *Gray,* 132 W. Va. 472, 52 S. E. 2d 759; Sec. 33, Art. 4, Chapter 160, Acts of the Legislature, 1947.

Notwithstanding that the lots were owned by the State of West Virginia at the time the liens were assessed, paving assessments could have been levied against the property under the authority conferred upon municipalities by Section 11, Chapter 89, Acts of the Legislature, 1949, effective March 7, 1949. See *Holswade* v. *City of Huntington,* 96 W.Va. 124, 122 S.E. 449. It was held in the *Holswade* case that a paving certificate was not void because it was issued against property owned by the State. It is true that the opinion in the *Holswade* case and the statute above adverted to indicate that no lien against the property of the State is created or authorized, but the statute providing for assessments to be made against state

property requires that persons "having charge of the fiscal affairs of such owner or the management of any such property * * *" shall make proper arrangements for the payment of the assessments when the same become due. That being true, even if the lots were the property of the State of West Virginia at the time of the street paving, we think that the lots were subject to an assessment against them though no enforceable lien could have been created as against the State of West Virginia.

For diverse holdings in other jurisdictions, relative to assessments against state owned land, see annotation, 90 A.L.R. 1137; and as to their enforceability, see annotation, 95 A.L.R. 689.

We are thus confronted with a situation where the state was the owner of property against which the assessment could be made without the creation of a lien, but the property was not assessed in the name of the State of West Virginia but in the name of former owners who did not own the property. In this situation it is logical to say that the assessments first made by the City of Beckley against the three lots mentioned in the names of Rucker and Williamson were ineffectual and void.

It is contended by the plaintiff that the City of Beckley was not a person within the meaning of the statutory provisions requiring redemption before confirmation and thus required to redeem the land. We are in agreement with that contention as to the City of Beckley. *City of Charleston* v. *Southeastern Construction Co.*, 134 W.Va. 666, 64 S.E. 2d 676; *Lumber Co. v. Carter Bros.*, 78 W.Va. 11, 88 S.E. 1034; Code, 2-2-10. But we are not disposed to hold that the payee of the certificates and its assignee should be so classified when, in fact and in law, they are persons within the meaning of statutory provisions. It follows as a necessary consequence that the first assessments having been void, neither the City of Beckley, the payee of the certificates, nor its assignee, had any right or duty to redeem the lands from sale in the suits brought by the deputy commissioner unless it may be said that

in view of the reassessment statute hereinafter discussed it may have been the right of the City of Beckley to protect its interest by intervention in those suits. We do not pass upon that question, however, since the plaintiff admits the surrender and cancellation of the certificates evidencing the attempted assessments first made by the council of the City of Beckley.

The defendant relies upon Section 33, Article 4, Chapter 160, Acts of the Legislature, Regular Session, 1947, which provides, in effect, that a purchaser at a sale made by a deputy commissioner of delinquent and forfeited lands in a school land suit, his heirs or assigns, acquires all the right, title and interest in and to the real estate as was vested in the state at the time of the execution and delivery of the deed, or by any person who was *entitled* to redeem. After land has become irredeemable no person is entitled to redeem but is accorded the *privilege to redeem*. Under the provisions of Section 8, Article 3, Chapter 160, *id.*, the former owner of real estate purchased at a sale by the sheriff *"may* redeem such sales from the auditor at any time within eighteen months after the date of such purchase." (Emphasis ours.) Section 9, Article 1, Chapter 117, Acts of the Legislature, 1941, provides that "Any owner of real estate whose interest is not subject to *separate assessment,* or any person having a lien on the land, or an undivided interest therein, or any other person having an interest in the land * * * which he desires to protect * * *" may pay all of the taxes assessed thereon. (Emphasis ours.)

The pleadings in this case do not disclose that there was any owner of an undivided interest in the three lots which was not subject to separate assessment, nor does the provision with reference to a person having a lien on the land apply to the City of Beckley, as above noted, for the reason that the City of Beckley is not a person within the meaning of the statute. Although the payee of the first paving certificate issued, as well as its assignee, had no lien on the lots by virtue of the first assessments, it may be said that it would have been good

business judgment for the City of Beckley to protect its interest in the lots, but it was not required by statute to do so.

The plaintiff adverts to the decision of this Court in *Smith* v. *Lewis,* 2 W. Va. 39, wherein it was held that the lien of a trust deed to secure the payment of money was not extinguished by the sale of lands delinquent for the nonpayment of taxes. Plaintiff cites cases subsequent to the *Smith* case wherein this Court departed from the principle enunciated in that case, and held "If at the time of such sale the land sold [at a delinquent tax sale] be under a mortgage or deed of trust, or if there be any other lien or incumbrance thereon, and such mortgagee, trustee, *cestui que trust,* lienor or incumbrancer shall fail to redeem the same within the time prescribed by law, then all the right, title and interest of such mortgagee, trustee, *cestui que trust,* lienor or incumbrancer, shall pass to and be vested in the purchaser at such tax-sale, and his title to the premises shall in no way be affected or impaired by such mortgage, deed of trust, lien or incumbrance." *Summers* v. *Kanawha,* 26 W.Va. 159. See *Winning* v. *Eaken, et al.,* 44 W.Va. 19, 22, 28 S.E. 757; *State* v. *Harmon,* 57 W.Va. 447, 50 S.E. 828.

It is settled law in this jurisdiction that liens held by private persons who do not avail themselves of the privilege to redeem under the statute are barred by a sale for taxes due the state, delinquent and unpaid. Moreover, the priority of "land taxes due the state * * *" over paving liens is declared by statutory enactment. Section 10, Chapter 89, Acts of the Legislature, 1949 (effective March 7, 1949.)

Giving the statutes and judicial decisions the effect contended for by the defendant may give rise to a conflict between statutory provisions relating to the sale of land for delinquent taxes and the assessment and creation of paving liens by municipalities. It is the duty of this Court to reconcile such conflict if one exists. *State* v. *Anderson,* 89 W.Va. 1, 5, 109 S.E. 782; *State* v. *Griffith,* 88

W.Va. 582, 584, 107 S.E. 302. The rights and procedure involved in the sale of lands delinquent for the non-payment of taxes rest in a measure on the provisions of Article XIII of the Constitution of this State. The creation and enforcement of paving liens rests upon statutory provisions, enacted pursuant to constitutional authority.

It is to be noted that the State sells to a purchaser in a school land suit a derivative title as distinguished from an original title. Section 1, Article 4, Chapter 160, Acts of the Legislature, 1947, Regular Session.

What has been hereinbefore discussed does not touch upon nor solve the vital question involved in this proceeding. As we have indicated, if the prior lien asserted by the plaintiff were created by contract between private persons, we think that the defendant would take the three lots discharged of any lien. But such is not the case here. We are confronted with the question whether the sale to Hatcher *barred the power* of the City of Beckley to reassess the three lots and thus create a valid lien. Reassessment is authorized by the following statute: "In the case of the construction of any permanent improvements where an assessment has heretofore been laid or may hereafter be laid for the cost thereof, which said assessment is or shall be void or voidable by reason of errors, irregularities or defects in the proceedings under which such improvement was made, or in case such assessment shall have been made against the wrong person or property, or shall have been omitted to be made in a case where the same was proper, it shall be the duty of the governing body within ten years after the completion of such improvement, or after any court shall have declared such assessment invalid, to cause notice to be given to any person against whom the cost of said improvement might properly be or have been assessed, of its intention to lay such assessment and fixing a time and place at which the owner may appear and show cause against the same. Said notice shall be served in the manner provided in this article in the giving of notices in assessment proceedings, or any other manner provided by law. At the

time and place, under the notice aforesaid, or at any time thereafter, the governing body shall proceed to lay and levy an assessment for the cost of such improvement as would have been lawful under proper proceedings at the time said improvement was completed, unless the owner so notified shall show good cause against the same. The reassessment so laid shall be a lien upon the property liable therefor in the manner hereinabove provided from the date of the completion of the improvement, with interest therefrom, and proper assessment certificates may be issued, recordation had, and payment and the lien may be enforced in the same manner and upon the same terms as would have been proper at the time of the completion of the said improvement had the assessment therefor been then properly laid and levied." Section 13, Chapter 89, Acts of the Legislature, 1949 (effective March 7, 1949).

Similar statutes have been challenged in other jurisdictions. The enactment of this statute is not void as violative of due process of law. *Washington Suburban Sanitary Commission* v. *Noel* (Md.), 142 A. 634; see *Spencer* v. *Merchant*, 125 U.S. 345, 31 L. ed. 763, 8 S. Ct. 921; see *City of Seattle* v. *Kelleher*, 195 U.S. 351, 49 L. ed. 232, 25 S. Ct. 44; *Lord* v. *City of Salem*, 282 Fed. 720. In the case of *Booth* v. *Uvalde Rock Asphalt Co.* (Texas), 296 S.W. 345, a statute authorizing reassessment of property for improvements, where conditions similar to those in this case existed, is discussed in its varying phases, and upheld. See *Dahlman* v. *Milwaukee* (Wis.), 110 N.W. 479; IV Dillon on Municipal Corporations, 5th Edition, Section 1469 and Footnote on page 2637; 14 McQuillin on Municipal Corporations, 3rd Edition, Section 38.219.

Where property is sold after an abortive effort to assess a paving lien, a new lien may be reassessed against the purchaser. *Seattle* v. *Kelleher, supra.*

We know of no constitutional impediment to the enactment of the reassessment statute hereinbefore quoted. Clearly, it is given retroactive effect. This Court has frequently held that a statute will not be given retroactive

effect unless it is clearly the intent of the Legislature to give it such effect. Even a cursory reading of the reassessment statute indicates that the Legislature intended to give that statute such effect.

Lest it be argued that to impress a lien for paving previously done or completed prior to the purchase of the three lots deprives defendant Hatcher of his property, we note that the decisions of this Court deprive a private person, who holds a prior lien on land sold in a suit for the benefit of the school fund, of a property right. *Summers* v. *Kanawha, supra.*

In view of the fact that Hatcher was charged with knowledge of the existence of the improvements and unpaid claim against the lots he had purchased, and that such lots had actually derived special benefits from the paving of streets on which they were situated, no injustice is done him. He is simply required to pay for the improvements which have presumably specially benefited and added value to the three lots he purchased.

In accordance with the foregoing, it is our opinion that the power conferred on the City of Beckley to reassess the three lots was not extinguished by the sale made in the suits brought by the deputy commissioner of forfeited and delinquent lands. As to the second question, we hold that upon compliance with Section 13, Chapter 89, Acts of the Legislature, 1949, a valid lien may be imposed upon the lots by reassessment. Relative to the subsidiary rulings, we are of the opinion that it was within the power of the city to levy a paving assessment against the property owned by the State of West Virginia, and we are also in accord with the ruling made by the trial court that the City of Beckley is not a person within the meaning of the statute relating to the redemption of lands from the sale for delinquent taxes. But we modify the third ruling of the trial court, holding that the payee of the certificates and its assignee are entitled to the same classification, and hold that such payee and its assignee are persons within the meaning of the stat-

ute.  As modified, the rulings of the Circuit Court of Raleigh County are affirmed.

*Modified and affirmed.*

GIVEN, JUDGE, dissenting:

Being of the opinion that the attempted reassessment against Hatcher is void, I respectfully dissent.  The statute quoted in the majority opinion authorizes such reassessment only if it "would have been lawful under proper proceedings at the time said improvement was completed, * * *".  The improvement as to Lot 31 was completed July 26, 1949, and as to Lots 8 and 9 on October 8, 1949.  The State was not a party to the reassessment proceeding and, admittedly, the reassessment was void as to it.  Hatcher did not obtain any interest in the property until his purchase from the deputy commissioner of forfeited and delinquent lands, long after the improvements were completed.  Therefore, any assessment against Hatcher would not have been "lawful under proper proceedings at the time said improvement was completed, * * *.", for the plain reason that a valid assessment can not be made against a person who owns no interest in the property.

I can not believe that such a reassessment against a subsequent purchaser of real estate within ten years from the date of the completion of an improvement is authorized, either expressly or by intendment, by the statute quoted.  To so hold would deprive subsequent purchasers of the right to rely on public records as to the existence or nonexistence of liens of such assessments, a right made plain by the recording statutes.  But, says the majority, "Hatcher was charged with knowledge of the existence of the improvements and unpaid claim against the lots he had purchased * * *".  I can not reconcile this conclusion of the majority with its conclusion that the first assessments "were ineffectual and void."  Why require a subsequent purchaser to take notice of a void lien? Can we breathe life into a claim that has ceased to exist, has expired by operation of law?

The majority cites authority holding that such a reassessment statute is not unconstitutional as violating the due process provisions of the Federal and State Constitutions. Properly interpreted, I think there can be no doubt as to the constitutionality of the reassessment statute quoted. As interpreted by the majority, however, I think it unconstitutional. The majority opinion permits the reassessment to be made and to become a lien against the property of a person who purchases it within ten years after the completion of the improvement. Such a person would be denied the right or opportunity to show that the costs of the improvement would be confiscatory, or that the improvement should not have been made, or other grounds available to persons who owned the property at the time the improvement was completed. Neither could the owner who purchased the property ten years after the completion of the improvement show that the full benefit and use of the improvement had been enjoyed by former owners. It is certain that in many cases, under the majority holding, subsequent purchasers would be forced to pay for improvements enjoyed in full or in part by former owners. This amounts to a taking of property of one person for the benefit of another without any opportunity to defend. No authority need be cited to show that such procedure is void of due process.

I am authorized to say that Judge Fox joins in this dissent.