### Ellen Blanchard v. Ward A. Knights et als

[146 A2d 173]

September Term, 1958

Present: Cleary, C. J., Adams, Hulburd, Holden and Shangraw, JJ.

Opinion Filed November 5, 1958.

*Waldo C. Holden* for the petitioner.

*Manfred W. Ehrich, Jr.,* for the petitionee.

**Hulburd, J.** The petitioner, Ellen Blanchard, is seeking "to foreclose" the "equity of redemption" of the petitionees, by reason of certain provisions pertaining to her maintenance and support appearing in a deed from her to the petitionees, Knights. Following hearing below the Chancellor entered a decree dismissing the bill of complaint. The petitioner is here on her exceptions to the decree and to certain findings made or refused by the Chancellor.

We start with the situation as disclosed by those findings which have been unattacked by exception.

On March 15, 1947 the petitioner conveyed by warranty deed to Ward A. and Hazel B. Knights, her son-in-law and daughter respectively, three described parcels of land in Pownal, Vermont. In this conveyance, following the covenants of warranty, appears the language upon which the petitioner bases her claim for relief: the grantor, it says, warrants the

premises "free from every encumbrance except that the consideration for this deed is the agreement on the part of the said grantees, for themselves, their heirs and assigns to support and maintain said grantor in sickness and health on parcel I hereinabove described, and in case the home on said premises should be destroyed by fire, then to maintain and support said grantor in some suitable home in said Town of Pownal.

"It is further mutually agreed that the said grantees are to pay the funeral expenses and burial expenses of the said grantor and to pay the taxes assessed on the within described premises, to make all necessary repairs at their sole cost and expense and to keep the buildings on said described premises suitably insured at their sole cost and expense.

"It is further mutually agreed that this agreement is to be binding upon the heirs, executors, administrators and assigns of the said grantees."

The grantees went into possession under the foregoing conveyance (which has been duly recorded in the land records) and the petitioner lived with them on "Parcel I" without complaint for a number of years. In the fall of 1947 and again in the summer of 1950 the Knights conveyed away a portion of the "Second Parcel" to petitionees Barber. The Barbers, in turn, conveyed a portion of the premises conveyed them, to petitionees Deery.

Following these transactions, the petitioner, in December, 1953, went to live with her granddaughter, Dorothy Hewson. This was done by an agreement between Ellen Blanchard and the Knights. Under it, the petitionees were to pay, and did pay, the petitioner's board at the rate of $10.00 a week to the Hewsons. This arrangement, after about two years, was succeeded by various others, each separately and mutually entered into, whereby the petitioner made her home with different grandchildren or relatives, each of whom was paid by the Knights for the petitioner's room and board. In all these moves a friendly relationship prevailed between the petitionees Knights and the petitioner. She frequently visited them during the period, and they maintained, at all times, a room for her occupancy at their home on "Parcel I."

During all this time, Ellen Blanchard had a bank acount

of her own which stood in the joint names of herself and her son, William. From time to time, since 1948, she directed him to pay various odd bills from this account. In no instance where this was done was there any request ever made beforehand of the Knights by Ellen Blanchard for payment of the bills in question nor was any demand for reimbursement made, prior to suit, after she had paid them. Any withdrawal from the joint account necessarily decreased the interest of the son, William, as joint tenant.

In August, 1957, William was appointed guardian for his mother who was then seventy-five years of age. Early in the spring of 1957 the petitioner had suffered a slight stroke and in August the petitioner was moved to the Sourdiffe Convalescent Home in Bennington. This brings us to the first exception which we wish to consider. The Chancellor found (finding No. 15) that the moving of the petitioner to the Sourdiffe Convalescent Home was made without consultation with the petitionees Knights. The petitioner excepted to this finding as being "irrelevant to any issue in this case and the testimony of Olive Morey in this regard is uncontradicted." Taking this exception at face value it avails the petitioner nothing, for a finding, even if unwarranted, is not ground for reversal where it does not pertain to an essential element of the case. *Partridge* v. *Cole*, 98 Vt 373, 378, 127 A 653; *Turner* v. *Bragg*, 113 Vt 393, 398, 35 A2d 356; *Cole* v. *Cole*, 117 Vt 354, 359, 91 A2d 819. The real question, as between the petitioner and the Knights, was not whether the latter were "consulted" when the petitioner was put in the convalescent home, but whether they agreed that she might be placed there. Neither the evidence nor the findings support such a view. The evidence was that the petitioner could have been cared for in a private home if well-attended. The most that the Knights ever agreed to was that if the petitioner "had" to be moved to the convalescent home, "it was all right." Thus the basis of any consent by the Knights is lacking. Thus for not one but for several reasons the exception to finding No. 15 is not sustained.

The petitioner excepted to the following finding:

"12. That payments were made by the Knights to William Blanchard for Ellen Blanchard's use of the tenant house and that payment has not been refused by the Knights of any balance that may be due;" on the following grounds:

"a. The finding that 'payment has not been refused' is a conclusion of law not supported by previous findings.

"b. As a matter of law, payment has been refused."

The foregoing finding related to one of the places where the petitioner stayed in her various moves and to miscellaneous bills which William Blanchard paid at his mother's direction and for which reimbursement is now claimed. There was testimony that the petitioner never complained to petitionee Knights about the payment of any bills and Knights himself testified that he had never refused to pay any bill presented to him for the care and support of Mrs. Blanchard. As applied to this case the appellant has failed to point out why a finding based on this testimony is a conclusion of law. We cannot see that it is.

Finding No. 17 made by the Chancellor reads as follows:

"17. That there were at the time of this hearing certain bills due to Dr. Manes of Bennington, and to the Putnam Memorial Hospital for the care of the said Ellen Blanchard. That payments have been made on these bills by the petitionees, Knights, and that they have assumed payment of said bills, and that the said creditors look to the Knights for their payment." The petitioner's exception to the foregoing points out no respect in which the finding is improper. It recognizes that the court might find all that it did and more besides: the balances due should have been included as well, the petitioner claims. A failure to find, upon proper request, is to be dealt with as such. Nothing in the petitioner's exception attacks the finding as made.

The petitioner also excepted to findings No. 21 and 24 (b) which read as follows:

"21. That the petitionees, Knights, have never refused to pay any obligations that they assumed under the deed to them from Ellen Blanchard."

"24(b) That the petitionees, Knights, have not breached

their agreement with the petitioner under the terms of the deed upon which this action was brought."

All that the petitioner's attorney says in his brief as to these findings is this:

"As to non-refusal to pay any obligations and as to non-breach of the agreement are clearly conclusions not based on subordinate findings, which we submit, are in direct conflict with requested findings fully supported, and with the law as given above."

In the light of this statement, we will move on to the requested findings, and after dealing with them, we will then be in a position to determine whether the decree, or any conclusions appearing in the findings leading thereto, are supported by the facts found and the law applicable thereto.

■ The first exceptions briefed in this group are to requested findings No. 24 and No. 25. By these requests the petitioner sought to have the Chancellor find the amounts of certain expenditures claimed to have been made from a joint account mentioned earlier. The petitioner claimed that as to these she was entitled to reimbursement. These findings were properly refused for the reason that the exhibits upon which they would have to be based were excluded from the evidence. The petitioner argues that the offered exhibits were improperly excluded. If they were, no exception was taken to the Chancellor's action in so doing. Moreover the offered exhibits, and evidence in connection therewith, failed to disclose what expenditures were made before and what after the petitioner left the premises. In addition the bills were never rendered to the Knights before payment and Mrs. Blanchard never asked the Knights to pay them. The exceptions to the Chancellor's refusal to find as requested in No. 24 and No. 25 are without merit and are not sustained.

■ The petitioner excepted to the Chancellor's refusal to find as requested in regard to repairs. The requests were as follows:

"18. The house needs painting and some of the wall is in bad shape. The interior of the house is not in good shape;"

"19. Petitionees Knights have not made all necessary repairs;"

The only finding made by the Chancellor on this subject was as follows:

"22. That the house on Parcel One is now in fair condition; that from time to time the petitionees, Knights, have made repairs to said premises, and that at the present time the premises are worth a minimum of Four Thousand Dollars ($4,000.00)." No exception was taken to the finding as made. We think that this finding, unexcepted to, was sufficient and that it was not necessary that the Chancellor make findings as to all subordinate facts or to recite the evidence. Compare *Strout Realty Agency* v. *Wooster*, 118 Vt 66, 79, 99 A2d 689; *McKinney* v. *Kelley*, 120 Vt 299, 141 A2d 660. The obligation under the deed "to make all necessary repairs" is to be given a reasonable construction with regard to the circumstances under which it was entered into. Obviously the grantees' duty did not extend to making every conceivable repair which might be desirable. It was something less than that. It merely required them to make all repairs reasonably necessary in the circumstances. In determining this, among other things, regard is to be had to the condition of the property at the time it was conveyed to the Knights. Compare *Foss* v. *Stanton*, 76 Vt 365, 367, 57 A 942. There was evidence before the Chancellor from which he might infer that the buildings needed painting at the time they were conveyed to the Knights and that they soon thereafter painted them, and that the situation as to painting had now returned to what it was at the time the Knights acquired title. It was for the Chancellor to say on all this evidence whether the condition of the paint or any other aspect of the buildings was such that he should find that necessary repairs had not been made. We cannot say that the evidence required the Chancellor to find as requested by requests No. 18 and No. 19. A careful consideration of all exceptions taken in connection with the findings fails to disclose reversible error.

We come now to the petitioner's exception to the decree dismissing the bill of complaint. In effect the Chancellor has said that on the facts he has found the petitioner is not

entitled to the relief she is seeking. This calls for an examination of the law on this subject as applied to the facts found.

■ At the outset it is to be noted that the petitioner is not seeking to foreclose a mortgage. There was none. The language in the deed itself is the basis of the relief sought. In *Abbott* v. *Sanders*, 80 Vt 179, 181, 66 A 1032, 13 LRANS 725, this Court held that where premises were conveyed on condition that the grantee support the grantor, such a conditional deed is to be treated as a mortgage to secure the grantee's performance, and upon breach by him, equity may grant relief by foreclosing and extinguishing his rights under the conveyance. *Hoadley* v. *Hoadley*, 114 Vt 75, 39 A2d 769, is to the same effect. Although in the instant case the deed is not conditional, in form, it expressly states that the consideration for it is the grantees' undertaking to support the grantor. The substance is largely the same although the form may differ. It was held in *Hoadley* v. *Hoadley, supra,* that the scope of a bill is to be determined, not by the special prayer for particular relief, but by the case stated. At p. 79 the Court said: "Under the general prayer the plaintiff may have relief agreeable to the case made by the bill." Since this is so and since there was a prayer for general relief here, the petitioner, upon a proper showing, was entitled to invoke the court to exercise its broad equitable powers. Cancellation or rescission may be granted on the ground of failure of consideration. 26 CJS, Deeds, §21b, p. 620. It is generally held, however, that there must be an entire failure or refusal to perform the agreement or at least a substantial failure to perform the contract. See cases cited in 26 CJS at page 622; see also rules and cases cited in 76 ALR 742 and 112 ALR 670.

■ Of course, a grantee's agreement to support must first be considered in the light of just what that agreement included. In the instant case the Knights covenanted to maintain and support the grantor "on Parcel I." This being so, the rule stated in *Dodge* v. *Benedict*, 59 Vt 651, 653, 10 A 750, applies. It was there held that where the obligation was to support at a particular place, there was no obligation to furnish support at another. To the same effect is *Lindsey* v. *Bradley,*

53 Vt 682, 683. It is argued by the petitioner that the original undertaking was modified and extended by agreement of the parties so as to cover support off the premises conveyed. As between the original parties no doubt this would be possible. But he who seeks equity must do equity. The petitioner here is asking that her deed, providing for her support, be treated as a mortgage. As such she is not in a position to modify or extend it by parole where the rights of third parties have intervened. To do that would be to go counter to well established mortgage law. See 59 CJS § 178 at page 223. It follows from the foregoing that the Chancellor's action in dismissing the complainant's bill of complaint as to the petitionees Barbers and Deerys was proper for they were bound by the support agreement only as it existed at the time they purchased and not as modified thereafter. At the time the grantees conveyed away portions of the premises to these last named petitionees, the petitioner was living on "Parcel I" of the premises with the petitionees, Knights, as contemplated by the deed. No trouble had arisen. The Barbers and Deerys took subject only to such rights as accrued to the petitioner by reason of the language in her deed to Knights and not otherwise

This leaves us with the question of whether the Chancellor was justified in dismissing the bill as to the other petitionees, the Knights. Under the law as we have stated it, we would have no basis for reversing the lower court as to petitionees Knights, unless there had been at least a substantial breach in the support agreement as modified by the parties. See in this connection, the analogous case of *Norton's Admr.* v. *Perkins,* 67 Vt 203, 213, 31 A 148, 151, wherein it is stated: "The failure to perform, which will defeat the vesting of the title should be a failure in substance, rather than of the letter of the contract. Otherwise, after years of faithful performance, one might lose, or be divested of his estate by a technical or partial failure."

It is agreed by all parties that the original agreement underwent modification. We think that under it the Chancellor found by inference that what was agreed to was that the Knights would assume responsibility for the necessary bills for the maintenance of the petitioner off the premises and

that there has been no breach in this undertaking by the Knights.

■ It is well established that this Court will assume in favor of the decree that the trial court inferred such facts from the other facts found as it ought to have done, or might fairly have done. *Abatiell* v. *Morse*, 115 Vt 254, 259, 56 A2d 464; *Barre City Hospital* v. *St. Johnsbury*, 117 Vt 5, 7, 83 A2d 600; *Andrews* v. *Newton*, 118 Vt 290, 292, 108 A2d 517. On the basis of such an assumption, we cannot say that a dismissal of the petitioner's bill of complaint was unjustified. The evidence in this case discloses no lack of support, no failure to support and no refusal to support. Consistent with this the Chancellor has found that there has been no breach. True there is a balance unpaid on hospital and convalescent-home accounts but it does not appear "that the plaintiff has been damnified in consequence of it." See *Lamb* v. *Clark*, 29 Vt 273, 277-78. The petitionees Knights were entitled to use such credit as they had in carrying out their agreement for support whether it be to buy groceries or institutional care. A breach would be in the failing to provide. A willingness to go into debt to avoid this eventuality speaks in the petitionees', Knights', favor not against them. The language in the deed was to secure the petitioner's support, not to secure the creditors. Having supported the petitioner for over ten years and having paid out, as the evidence shows, in excess of $4,000.00 in money, the Knights are not to be divested of title because they have had to resort to credit,—at least where there is no finding that the credit has been exhausted or impaired. Application of sound equitable principles justified the Chancellor's dismissal of the petitioner's bill of complaint and her exceptions thereto are not sustained.

*Decree affirmed.*