**Carlot Bogie v. Town of Barnet, et al.**

[270 A.2d 898]

No. 128-69

Present: **Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.**

Opinion Filed April 7, 1970

*Otterman & Allen,* Bradford, for Plaintiff.

*Arthur L. Graves,* St. Johnsbury, for Defendants Town of Barnet, Joseph Roy, Paul Nelson, Austin Whitehill and Edward R. Mackay.

*Davis, Martin & Free,* Barre, for Defendants R. Douglas Gilmour, Franklyn Thompson and Gloria Thompson.

*Witters, Akley & Brown,* St. Johnsbury, for Defendant Citizens Savings Bank & Trust Co.

**Barney, J.** The plaintiff's home premises were sold for delinquent taxes and bid in by the town for the amount due, $848.67. The property consisted of a three family dwelling, barn and lot of land, appraised at the time of last delinquency

at $9000, for grand list purposes. After the expiration of the period of redemption without reclamation the tax collector deeded the property to the town. The property was then offered for sale by sealed bids and sold, within three weeks, for $5314.00. A local bank advanced $5000 secured by a first mortgage on the property.

The plaintiff's action in equity seeks to have the property restored to him, together with damages, and to have set aside the levies, deeds and mortgages on the property representing a derogation of the plaintiff's title. The defendant town denies that any title remains in the plaintiff, or that any damages should be recoverable. The purchasers of the property and the financing bank, also defendants, likewise argue strenuously for the legality of the tax sale proceedings and the validity of the present state of the title, and pointed out that work has been done and money spent repairing and restoring the property.

The chancellor made findings and issued a decree dismissing the bill, thus affording the plaintiff no relief. These findings established that the plaintiff, unemployed and receiving a disability pension, made application to three different banks for a mortgage loan sufficient to redeem the property, but was refused in each case. The plaintiff's divorced wife still appeared on the town records as a part owner of the property, and the pleadings acknowledge that a petition for partition, brought by the wife against the plaintiff, is still on record in the land records of the town and is undisposed of in Caledonia County Court. The defendant town's contention that this property was unencumbered was apparently not shared, justifiably, by the lending institutions involved. In these circumstances the litigation cannot be dismissed on the terse claim that the plaintiff's difficulties are his own fault. The original findings contained an expression by the chancellor as to the rightfulness of the retention, by the defendant town, of the proceeds of the sale over and above the costs and taxes due. This finding was, on petition of the town, subsequently stricken by amendment.

There is no doubt that this concern of the chancellor is the central equitable consideration in this case. Insofar as the original tax sale and the subsequent sale upon bid, neither findings nor evidence disclose any legal defect in the proceedings. The statutes have, according to the evidence, been com-

plied with and the transfers of title made thereunder must be honored. On the facts presented defendant Gilmour is confirmed in his ownership of the premises.

The true question in the matter, and the one on which the plaintiff ultimately rests his case, arises from the claimed unconscionable difference between a tax sale bid and sale of $848.67 and the demonstrated far greater value of the property, evidenced by the later sale for $5,314.00. Does the difference rightfully belong to the town?

We think not. 32 V.S.A. § 5259 authorizes the city or town assessing the tax to become the purchaser, if no bid equal to the taxes and costs is made. The statute goes on to say that lands so acquired shall be held, leased, sold and conveyed like other real estate belonging to such city or town. The proposition advanced by the town is that this expresses an intention that the town's position be identical to that of any other purchaser at a tax sale.

With respect to the acquisition of title, retention, sale or lease of the property, this is no doubt sound. The policy in support of ready alienability of title to good faith, third party purchasers for value supports this view. The real issue here is the accountability for the acquired value in excess of any *bona fide* obligation due and owing the town.

*Peterson* v. *Moulton*, 120 Vt. 439, 441, 144 A.2d 717 (1958), obligates the collector of taxes to sell only so much of the land as is necessary to pay taxes and costs, as the statute requires. This requirement measures the obligation of the taxing authority to its taxpayer. This obligation is not altered or avoided by the exercise of the prerogative of purchase at the tax sale.

The delinquent taxpayer is, in all these proceedings, exposed to the risk of the loss of his property by legitimate sale to a third party purchaser. If the sale meets the test of legal validity, his recourse then operates through his statutory right of redemption.

The relationship of the taxing authority to the taxpayer stands, equitably, on a different footing. The relationship is not truly arms-length, but has fiduciary aspects. The municipality, by appropriate procedures, assesses the tax. In cases of delinquency, it makes the determination to initiate tax sale

proceedings. The objective is to recover taxes and costs incurred in the process of collection, not to operate a real estate business for profit.

We construe the authority given to the municipality to bid at a tax sale as an ultimate recourse given to protect the town against any conspired attempts to avoid the sale by discouraging all bidding. 32 V.S.A. § 5259 indicates that the position of the municipality as a bidder is a special case, by denying to it authority to bid at all unless no bid equal to the tax and costs is made at the sale. A policy which encouraged municipal governments to promote situations where it was authorized to acquire the property of its own taxpayers at unconscionable discounts, to the enrichment of the town treasury or enlargement of its land holdings, is fraught with danger and we find not contemplated by the legislative enactment.

The Supreme Court of the United States recognized this in *U.S.* v. *Lawton*, 110 U.S. 146, 28 L.Ed. 100, 101 (1884), when it said, in connection with a similar direct bidding-off by the United States in a tax sale:

> To withhold the surplus from the owner would be to violate the Fifth Amendment of the Constitution and to deprive him of his property without due process of law and to take his property for public use without just compensation. If he affirms the propriety of selling or taking more than enough of his land to pay the tax and penalty and interest and costs, and applies for the surplus money, he must receive at least that.

The corresponding rights under the Vermont Constitution upon a taking by public authority appear in Chapter I, Article 2. Satisfaction of the statutory procedures, although they may meet the test of due process, does not negate the obligation to account for the excess proceeds received from the sale. Unquestionably the taxpayer may release or waive his rights to such excess, or forfeit them by failing to seek recovery within the appropriate time. But since the issue on which this matter turns is not a question of the validity of the assessment of the tax or the procedural steps looking to the collection of the delinquency by the tax collector, the time limitation provision of 32 V.S.A. §§ 5294 and 5295 do not apply and this action is not thereby barred.

The plaintiff has asked for assignment of a share of the costs of these proceedings to any interest that may accrue to his divorced wife. In the present posture of this case, this appears to be an inappropriate proceeding to attempt to make any allocation of rights as between these two parties, and would be better left to separate action where the interest of others would not be compounded or complicated.

Since the facts support the *bona fide* nature of both of the sales proceedings, all that remains is for an accounting to be had between the taxpayer and the town with respect to the proceeds of the sale to Gilmour. Against this amount the town is entitled to charge the delinquent taxes and cost of collection. This can be accomplished by an accounting below before the chancellor.

*Decree reversed and cause remanded for the accounting called for in the opinion, between the plaintiff and the defendant Town of Barnet, to be followed by a decree assigning the proceeds of the sale between those parties according to the accounting, and confirming title to the premises in the defendant Gilmour. All parties to bear their own costs in this Court.*

**Shangraw, J.** dissenting. Under the provisions of 32 V.S.A. § 5259 a city or town is authorized to become the purchaser of real estate at a tax sale thereof ". . . if a bid not equal to the tax and costs is made at such sale. Land so acquired shall be held, leased, sold and conveyed like other real estate belonging to such city or town."

Then follows section 5260 which permits redemption by the owner or mortgagee, his representatives or assigns within one year from the day of sale.

In this case the sale was held on February 21, 1966. The Town of Barnet purchased the property for the amount due on the delinquent taxes and costs, namely $848.67. No other bid for the property was made. There remained no surplus over and above the delinquent taxes and costs due. No question is raised as to the validity of the tax sale.

The property was not redeemed. On March 3, 1967, the tax collector conveyed the property to the Town of Barnet. On March 22, 1967, the town sold and conveyed the property

receiving therefor the sum of $5,314.00. Not until March 6, 1968, did plaintiff bring this action.

This is not a case of a disposition of any surplus resulting from the price bid for the property at the time of the public sale over and above the taxes and costs. On the contrary, we are concerned with a subsequent and independent transaction, that is, a resale of the property by the town which resulted in a profit.

In referring to 85 C.J.S. Taxation § 817, I find the following statement:

> "As a general rule the surplus of a tax sale remaining after payment of the taxes, interest, and costs belongs to the owner of the property at the time of the sale; but, in the case of a resale by the state or county, the former owner is not entitled to such surplus, unless the constitution or a statute provides otherwise" See cases cited under notes, 88 and 96. See *Oosterwyk* v. *County of Milwaukee,* 31 Wis.2d 513, 143 N.W.2d 497 (1966).

To my knowledge, we have no statutory authority requiring payment to the former owner of the property of any profit or surplus derived by the Town of Barnet as a result of the resale of the property. By retaining the profit, I seriously question whether the facts reveal a "taking of property" contemplated by the Federal and State Constitutions.

Had the property in question been purchased at the tax sale by a third party for only the amount of the unpaid taxes together with costs, and without any then surplus remaining, it must be recognized that the taxpayer should not be permitted to participate in any profit derived on a resale of the property.

By purchasing the property at a price not exceeding the unpaid taxes and expenses, it is my view that the position of the Town of Barnet is akin to that of a third party purchaser. If, later, a profitable resale was made, which appears to be the case, it becomes the town's good fortune. On the contrary, had conditions resulted in a loss to the town on a resale of the property, it would have been the town's misfortune, not that of the taxpayer.

It seems to me that to require an accounting on the part of the town leads to inconsistent and unequal rights of a town

and third party purchasers at a tax sale which are not justified. I believe the town of Barnet stands in the same shoes as a third party purchaser and should not be required to account to the plaintiff for the profit derived from the resale of the property.

The case of *U.S.* v. *Lawton*, 110 U.S. 146 (1884), cited in the opinion, is distinguishable from our case in that the profit or surplus resulted from the initial tax sale, and not from a resale of the property as in this case.

I would affirm the decree dismissing plaintiff's bill of complaint.

### On Reargument

**Barney, J.** The existence of any fiduciary relationship between the town and its officials and the plaintiff taxpayer is challenged on reargument by the defendant town. *Cummings* v. *Holt*, 56 Vt. 384, 387–88 (1883), among other cases, points out that sales of land for taxes are modes of transferring land titles by operation of law, without the agency of the owner. They are not "willing-buyer willing-seller" transfers, but proceeding *in invitum*. *Brush* v. *Watson*, 81 Vt. 43, 47, 69 A. 141 (1908). The case of *Chandler* v. *Moulton*, 33 Vt. 245, 248 (1860), specifically refers to the fiduciary relationship created when a tax collector holds property to be sold for taxes. The taxing authority stands before the law no better than the officer. *Smith & Son* v. *Town of Hartford*, 109 Vt. 326, 333, 196 A. 281 (1938). Moreover, the *Chandler* case also points out that the inconsistency in the positions of buyer and seller makes them so incompatible that they ought not to be united. As to municipalities, the legislature has, by 32 V.S.A. § 5259, excused this incompatibility, but this does not put the town at arms-length with its own delinquent taxpayer. His situation is the product of the acts of the municipality in both assessing the tax on his property, and initiating the proceedings looking toward collection and resulting in the sale. For the privilege of so proceeding, the town must suffer the restraints of fiduciary duty.

The property sold at the 1966 tax sale was shown on the grand list of the defendant town as consisting of two parcels, and in 1965 and 1966, separately listed, the dwelling house and one-half acre of land was appraised at $8,100.00, and the

so-called "boarding house lot" was appraised at $900.00. In 1967 these appraisals were increased 25%.

At the tax sale, both parcels were sold as a unit to the town as purchaser under the statute, 32 V.S.A. § 5259, for $848.67, the taxes and costs due, there being no other bidders. The tax collector had canvassed those present for bids for less than the whole property, but got no bids at all other than the one for the whole finally interposed by the town. With all technical requirements having been complied with, the transaction was not then vulnerable to an attack on its procedures.

However, it was open to the taxpayer-plaintiff to pursue one of several remedies. He could exercise his redemption rights under 32 V.S.A. § 5260. This must be done within one year. He could also challenge as invalid acts relating to the collection of the tax, within one year limitation of 32 V.S.A. § 5294. Or he could, as was done here, sue the town as purchaser and grantee under the tax collector's deed, and its assigns, for recovery of his lands. This right of action is subject to a three year limitation. 32 V.S.A. § 5263. A showing of invalidity in the sale is a prerequisite to recovery.

In this case, beyond what had already been developed in the evidence, the facts also showed that, after the one year redemption period had passed, less than three weeks after receipt of the tax collector's deed, the defendant town sold the same premises to the high bidder for a price of $5,314.00. This reveals an immediate confrontation with the proposition in *Brush* v. *Watson, supra,* 81 Vt. at 49, which states that if the consideration paid on a tax sale is so inadequate to lead any fair-minded person to the conclusion that it was unnecessary to sell that entire property for the payment of the taxes and costs, that fact alone is enough to establish that the collector sold more than was necessary. *Cummings* v. *Holt, supra,* 56 Vt. at 388, labels such a sale "fatally defective," and *Peterson* v. *Moulton,* 120 Vt. 439, 442, 144 A.2d 717 (1958), reiterates the rule that it is for one who justifies under a tax deed to prove that no excess was sold. Thus, although compliance with the mechanics of the tax sale procedures was established, compliance with the substantive requirements was not.

This proceeding is in equity. Implicit in such an action is a requirement that the plaintiff be ready and willing to do equity on his part, if necessary, at least as to third parties who may have, by investment, increased the value of the property after good-faith acquisition from the town. *Blanchard* v. *Knights*, 121 Vt. 29, 37, 146 A.2d 173 (1958). This requirement is intensified by the limitation of such a third party's recovery against the town to the amount paid to acquire the property. *Saulters* v. *Victory*, 35 Vt. 351, 353 (1862). In this case it is undisputed that the purchaser from the town, over and above the purchase price, has expended money on the property, replacing the furnace and repairing the brick work. Plaintiff's right to return of the property is compromised by his failure to make any offer in these proceedings to do equity toward that purchaser in connection with these improvements.

Payment to the plaintiff of the money received by the town in excess of taxes and costs, in lieu of return of the property, is opposed because no express authority for such payment exists. Further, it is pointed out that the law says that land acquired by tax sale belongs to the town, and may be held, sold, leased or conveyed as any other lands owned by the town. 32 V.S.A. § 5259. In other remedies against property on which taxes are due, provision is made for paying over any surplus. Where the tax obligation is enforced by way of foreclosure of a lien on the property, the excess must be accounted for and paid over as provided in 9 V.S.A. § 1796, as in the case of foreclosure of a chattel mortgage. 32 V.S.A. § 5061. That excess goes to the taxpayer. Where the remedy of distraint is used under 32 V.S.A. § 5191, the balance from the sale is to be returned to the taxpayer. 32 V.S.A. § 5193.

There is no such provision with respect to the collection of taxes by the institution of a suit for that purpose under 32 V.S.A. § 5221. This is because the measure of recovery is determined by the extent of the tax obligation, and there is no excess to dispose of. Similarly, if the statutory injunction in 32 V.S.A. § 5254 is obeyed, and only so much of the land is sold as is necessary to pay the tax and costs, there should be no excess to dispose of. Thus, any statutory direction to account for the excess is not only unnecessary, but would, by implication, run counter to, and undercut, the restriction on

the amount of land to be sold contained in 32 V.S.A. § 5254.

This distinction is reflected in our case law. For example, where the remedy of distraint is availed of, it may not be an impropriety for the collector to sell more of that distrained property than is required to pay the tax. Since the statute requires the balance or overage to be paid to the owner-tax-payer, the sale is not invalid. *Hughes* v. *Kelley,* 69 Vt. 443, 445, 38 A. 91 (1897). On the other hand, not only is a sale of more land than necessary a violation of the tax sale statute, but is further condemned because it may enlarge the burden of redemption. *Cummings* v. *Holt, supra,* 56 Vt. at 388. Thus, the issue is not the absence of statutory authority to pay over any excess proceeds, but, instead, the absence of any authority to receive them, on a sale of land for taxes, in the first place.

When the town exercised its privilege under 32 V.S.A. § 5259 to become a purchaser at the tax sale, it also subjected itself to the right of the taxpayer to bring an action to recover his lands against the town as grantee of such lands under a tax collector's deed, within the limits of 32 V.S.A. § 5263. The fact that the plaintiff did not qualify to recover title or possession of the property in his action did not foreclose him from compensatory relief, based on the demonstrated sale value of the property levied upon, over and above the taxes and costs. No justification for the withholding of this excess from the plaintiff, derived as it was from the compelled sale of his land, has been demonstrated. Its retention by the town amounts to an unlawful taking for public use without compensation, contrary to Chapter I, Article 2, of the Vermont Constitution.

*No change or modification of the previous order is required as a result of reargument. Let full entry go down.*

**Shangraw, J.** Dissenting. Considering the majority view following reargument, I desire to supplement my previous dissent by the following additional comments.

The technical requirement of the statute in conducting the initial sale of the property, and its purchase by the town, were complied with. No fraud or collusion is charged. The validity of the tax is not questioned. The tax collector, without success, attempted to receive bids for less than the whole property.

The precise question presented is whether, in the absence of legislative direction,—is the plaintiff, defaulting taxpayer, entitled to the profit made by the town on a resale of the property. The statutes in question make no provision for such recovery.

The majority view holds that on equitable principles plaintiff should recover. I perceive no basis in equity to hold that where property is resold at a profit following a tax sale, such as here, that a former owner is entitled to enjoy such profit. A similar point of view is expressed by the Texas Court in *Booty* v. *State,* (Tex. Civ. App. 1941), 149 S.W.2d 216, 217.

The question of proper disposition of surplus proceeds from the sale of property acquired at a tax sale by a municipality has received infrequent consideration in the litigated cases. It has been held that in the absence of contrary provision by statute, (*Taylor* v. *Monroe,* 158 Ohio St. 266, 109 N.E.2d 271 (1952)) or constitution, (*City of Beckley* v. *Matcher,* 136 W.Va. 169, 67 S.E.2d 20 (1951)) a municipality's title to such property is absolute so that a town is free from either legal or equitable claims by the taxpayer to any surplus realized. This result is supported by a recent decision of the Massachusetts Court in *Kelly* v. *City of Boston,* 348 Mass. 385, 386–87; 204 N.E.2d 123 (1965). See *Oosterwyk* v. *County of Milwaukee,* 31 Wis.2d 513, 143, N.W.2d 497 (1966).

The recent case of *Spurgias* v. *Morrissette,* 109 N.H. 275, 249 A.2d 685 (1969), decided in 1969 is comparable to that now considered. In the New Hampshire case the plaintiff was the owner of two house lots and a dwelling in the town of Exeter which the town purchased at a sale for unpaid taxes of $125.59. The town later sold the property for $3,700, leaving a net surplus, after costs, taxes, and interest, of $2,865.54.

The town voted to raise and appropriate $2,865.54 to reimburse the plaintiff, taxpayer, for the profit made by the town. The selectmen, by vote of the town, were instructed to settle with the plaintiff. The selectmen refused to comply and make payment as directed. A petition for a writ of *mandamus* was brought by the plaintiff to compel the selectmen to comply with the vote of the town.

The New Hampshire Court held that, in the absence of a contrary provision by statute or Constitution, a municipality's

title taken in default of redemption from a tax sale is absolute and that the proceeds on resale were the property of the town. As such, they were public funds, and the town lacked authority to pay them out on any theory of "equity and good conscience."

If there should be a remedy for someone in the plaintiff's position, it is my view that the matter rests in the legislative domain.

I would affirm the decree.